IN RE WILL OF JOHN KNOX, Deceased, MARGARET PAXTON,
et al., Proponents, Appellees, v. JOHN KNOX, JR., et al.,
Contestants, Appellants.

**Wills:** INSANITY: REMARKS BY THE COURT. In the contest of a will
1    on the ground of insanity, a remark of the court that it would
be taken for granted that certain witnesses knew the facts in-
quired about, which, if shown, would raise a presumption of
testator's insanity, was prejudicial, and was accentuated by the
further error of refusing a showing of his conduct at the time
inquired about.

**Insanity:** EVIDENCE OF: The conversations had with a testator at
2    the time his will was drawn may be shown as bearing upon the
question of his sanity, but not as proof of any fact asserted or
circumstance referred to by him in such conversations.

**Mental Capacity:** INSTRUCTIONS. An instruction that the fact that
3    a short time before the execution of the will testator's wife had
conveyed to him all her property, and that at the time the will
was drawn testator stated to the scrivener that she had con-
veyed her property to him and in consideration therefor he had
agreed to will her all his property, may be considered in deter-
mining the reasonableness of the will and testator's mental ca-
pacity at the time, is erroneous, (1) as assuming facts not in
evidence; (2) as authorizing a finding based upon incompetent
evidence, and (3) as assuming to determine the weight of the
evidence.

**Insanity:** BURDEN OF PROOF. Where insanity has been proven it is
4    presumed to continue until the contrary appears, and the bur-
den is on the one asserting a return to sanity.

Insanity:   EVIDENCE.  In the contest of a will on an issue of insanity alleged to have existed for some time, evidence of testator's peculiar habits is admissible.

*Appeal from Mahaska District Court.*—Hon. JOHN T. SCOTT, Judge.

MONDAY, FEBRUARY 1, 1904.

THIS proceeding was instituted to contest the probate of an instrument purporting to be the last will and testament of John Knox. There was a jury trial, and verdict in favor of the proponents. From an order made admitting the instrument to probate, the contestants appeal.— *Reversed.*

*L. C. Blanchard, F. D. Reid,* and *McCoy & McCoy* for appellants.

*Seevers & Malcolm, J. F. & W. R. Lacey,* and *A. E. Clevenger* for appellees.

BISHOP, J.—The only ground of contest is that the testator was of unsound mind at the time of the execution of the instrument presented. The testator died in January, 1901, at the age of seventy-six years. He had been twice married. By his first wife, from whom he was divorced in the year 1865, he had four children, one of whom died while in youth, and the other three are the contestants in this proceeding. In the year 1883, and before the execution of the will proposed, he married a childless widow. She died some years afterward, and previous to his death. There were no children as the result of the second marriage. The will proposed bears date November, 1883, and gives to each of his children by his first wife the sum of $5. All the balance of his estate is given to his wife. The proponents of the will are the heirs at law of the deceased wife.

I.   During the trial a medical witness called by the contestants was asked on cross-examination his opinion "as to

the sanity of a man in 1883 who in 1880 was able to sit as a

1. INSANITY: remarks by the court. juryman in seven trials during a single term of court, and this without any evidence of mental disease." The question was objected to, and, after a somewhat entended colloquy between counsel and the court, counsel for proponents said: "I propose to ask him now if it is his professional opinion that a man can do that." Court: "I will take it for granted that there are a number of these jurors who will know that fact, and the objection is sustained. If a man is competent to sit on seven trials at a term of court, we will take it, I presume, that he is of sound mind." Counsel for Proponents: "This case might just as well stop now, because we will show that." Court: "That ought not to be stated. It is time enough for that to be stated in the usual manner—in the proper way." Counsel for proponents: "I was just confirming what the court said." Court: "I was simply speaking about what would be the effect of that kind of testimony." Subsequently the proponents introduced evidence to the effect that during the months of December, 1879, and January, 1880, John Knox did serve as a juryman in seven different cases in the Mahaska district court. That the remarks made by the court, as quoted above, were prejudicial in character, we have no doubt. It was the theory of contestants, and evidence had been introduced tending to prove, that Knox was afflicted with insanity as early as the year 1875; that the disease in his case was progressive, chronic, and permanent. Now, the remarks of the court complained of were made in the presence and hearing of the jury, and therefrom the jury may very well have reached the conclusion that, if jury service on the part of Knox was shown as claimed, from the viewpoint of the court, at least, such would be sufficient to establish sanity as of the time the jury service was rendered. That the fact of jury service was proper matter to be considered may be readily conceded, but that such fact was conclusive of sanity cannot be true, either in reason or as resting on authority. It is a well-known fact that jurors are apt to attach great importance to statements

made by the court during the trial of a case.    Such state-
ments frequently have the same weight and are as potent in
influence as though embodied in a written instruction. *Shak-
man v. Potter,* 98 Iowa, 61.    So, too, we think that the pre-
judice arising out of the statements thus complained of was
accentuated by the error of the court—for such we hold it to
have been, under the circumstances—in subsequently refus-
ing to allow contestants to prove what had been the conduct
of Knox during the time he was serving as a juryman.

II.    W. R. Lacey, one of the attorneys for proponents,
was called as a witness on behalf of his clients.    He testified
that he had drawn the instrument now offered for probate.
2. MENTAL    He was then permitted—and this over the ob-
  capacity:
  evidence.    jection of contestants—to detail the conversa-
tion had by him with the testator at the time the instrument
was drawn.    Such evidence was properly received, as we
think.    It was proper to be considered by the jury as bearing
directly upon the question of the mental condition of the tes-
tator at the time thereof.    As the witness was subsequently
asked to express an opinion as to the mental  soundness  of
testator, basing the same upon the facts testified to by him,
the jury was also entitled to take the evidence of the witness
as to the conversation detailed by him into consideration, in
determining what, if any, weight should be attached to the
opinion expressed.    But it may be said in passing—and the
importance thereof will presently appear—that the evidence
relating to such conversation was neither material nor com-
petent for any other purpose.    It certainly could not be re-
ceived as even tending to establish as an evidentiary fact in
the case on trial any matter of fact asserted, or any circum-
stance referred to by the testator during the course of such
conversation.    The sole question at issue was the sanity of
the testator.    As related to the conversation detailed by the
witness, the sole question was, did the testator speak and con-
duct himself as one at the time in possession of his mental
faculties?

III. The contestants complain of the twenty-first instruction. It is as follows: "The fact that a short time before the execution of the proposed will the wife of the testa-

**3. MENTAL capacity; instructions.** tor conveyed all her property to him, and that testator at the time of the execution of the proposed will stated to the party who drew the will that his wife had deeded to him all her property, and in consideration therefor he had promised to will her all his property—This, you are instructed, is entitled to much consideration in determining the justness, reasonableness, or unreasonableness of the will, and is also a circumstance which it is proper for you to consider in determining the mental capacity of the testator at that time." It is said that the instruction involves error, and for three reasons: (1) Therein facts are assumed which do not appear in evidence; (2) the jury was told, in effect, that what was stated by the testator to the party who drew the will might be accepted as sufficient to establish the matters of fact referred to in the statement made; (3) the court invaded the province of the jury, in assuming to determine the weight and sufficiency of evidence. We think that each of these several contentions must be sustained. The record is wholly barren of evidence tending to prove that the wife of the testator had conveyed all her property to him. Opinions may differ as to whether or not the initial phrase of the instruction assumes such fact to have been proven, but certain it is thatt he jurors were thereby given warrant to conclude that the fact in truth existed, and was before them for consideration. Presumably, the court, in giving such instruction, proceeded upon the mistaken theory that the statement made by the testator to his attorney, Lacey, at the time the will was drawn, could be accepted as tending to. prove at least the asserted facts embodied in the statement In detailing the conversation, Lacey says: "One of the reasons he gave for the disposition of his property to Mrs. Knox and her heirs was the fact that at the time of their marriage, or about that time, she had transferred to him all her property; and it had been transferred to him, as he said, under an

agreement that the title should be placed in him, so that if she would die he would have the entire property, and, in the event of her surviving him, he would make a will so that she would have the property after his death." That this statement could not be accepted as even tending to prove the facts of a conveyance, or of an agreement, as in the conversation referred to, we have already pointed out in the preceding division of this opinion. That it is error to give an instruction based upon facts not in evidence is familiar doctrine. *Negley v. Cowell*, 91 Iowa, 256; *Podhaisky v. Cedar Rapids*, 106 Iowa, 546.

What we have already said makes it possible to dispose of the second contention of appellants in a few words. Taking the instruction as it reads, the jury may well have understood that the testimony of Lacey as to what was said by Knox to him was all-sufficient proof that the facts, in truth, existed as stated. Now, upon its face, the will is not unjust, and it is no part of the contention of appellants that it is unjust in any legal sense. Taking it for granted, therefore, that the justness of the provisions of the will from a moral viewpoint was proper matter for consideration in determining the question of the sanity of the testator, still it remains true that such consideration must be predicated upon facts proven by competent testimony produced upon the trial of the case.

The remaining ground of contention may also be disposed of in brief. Conceding that the fact that a man has made a just will may properly be considered as a circumstance tending to prove sanity, nevertheless it is for the jury to say what weight should be attached to such circumstance. It was not within the province of the court to exalt the circumstance as a piece of evidence, or otherwise indicate the degree of importance that should be attached to it. *Napper v. Young*, 12 Iowa, 450; *Robinson v. Railway*, 30 Iowa, 401; *Muldowney v. Railway*, 32 Iowa, 176. The principle which authorizes the court in a proper case to advise the jury with reference to the relative value of certain species or

classes of evidence—as that opinion evidence is of low grade, the value of writings as opposed to oral testimony, etc.— cannot be invoked as authorizing one item of evidence to be singled out and made the subject of special commendation. Nor was the objectionable feature of the instruction overcome by the general instruction given, "that the jury were sole judges of the facts and the credibility of the witnesses, and the weight to be given to their testimony."

IV. Complaint is made of other instructions given by the court, and, in view of a new trial, brief notice may be taken thereof: In the course of the eighth instruction the jury was told that "the fact that the testator, by his will, devised nearly all of his property to his wife, is of itself, *and in the absence of other testimony,* no evidence that the testator lacked mental capacity to make the will." The italics are ours. The proposition thus stated cannot be said to be erroneous in the abstract. It is said, however, that, in view of the italicized portion, the instruction was not applicable to the case that was made before the jury; that there was much other evidence bearing upon the question at issue, which the jury was bound to consider. Taking the thought of the court to be that the mere fact that a testator devises all of his property to his wife is no evidence, taken alone, of his mental incapacity, and we think the criticism misplaced. It may be that the instruction was liable to be misunderstood, and certainly a change in the wording would have made the thought more clear. In several of the instructions given, the jury was told that, to defeat the will, it must be found that at the very time of its execution the testator was of unsound mind. Undoubtedly this is correct doctrine. But it was the theory of contestants that the testator had been insane, beginning in the year 1874; that the form of insanity with which he was afflicted was progressive and permanent. Evidence was introduced tending to support such theory. If the jury believed such evidence, and so found the fact to be, it was not necessary to a verdict in favor of contestants that some witness in their behalf had testified with reference to

conduct, appearance, etc., of the testator as of the very day when the will was drawn. In view of the record as made, we think an instruction should have been given, as requested by contestants, to the effect that if the mind of the testator was found to have been permanently affected prior to the making of the will so that he was incapable of making a will, then it was not incumbent on the contestants to negative the fact that

**4. INSANITY: burden of proof.** a lucid interval had occurred, during which the will in question was executed. Every man is presumed in the first instance to be sane, and the burden of proving insanity is upon him who asserts it. But insanity having been once established it will be presumed to continue until the contrary is shown, and the burden is then cast upon him who asserts a return to sanity. 1 Greenleaf, Evidence, section 42.

Other errors assigned need not be made the subject of discussion. We have examined the record with respect to each thereof, and find many of them to be without merit.

**5. INSANITY: evidence.** Where error appears, save in one instance, the same is of such character that a repetition is not likely in the event of a retrial of the case. During the trial the contestants sought to prove the condition in which the personal effects of the decedent were found after his death— especially the contents of certain boxes, in which had been stored away a mass of rubbish. There was evidence tending to show that decedent had long been engaged in gathering up such rubbish, and the evidence was competent as bearing upon his habits and conduct, etc., from which, in connection with all the other evidence proper to be introduced, the question at issue was to be determined.

For the errors pointed out, the order appealed from must be, and it is REVERSED.