In re Estate of Martha Jones, deceased.    J. F. Stephens, Proponent, Appellee, v. Charles ·G. Jones, Contestant, Appellant.

**Wills:** EVIDENCE: CONTENTS OF DOCUMENTS. It was error to permit
1  a witness to testify to the contents of a will, over the objection
that it was not the best evidence; and also to give his understanding as to who was to take under the will.

**Testamentary Capacity:** EVIDENCE OF PHYSICIAN. On an issue of
2  testamentary capacity, a physician who has been permitted to
state that testatrix was suffering from disease, should also be
allowed to state whether the patients physical condition affected her mind; and, having diagnosed the case and indicated
his treatment, his further examination as to the patients condition of body and mind was proper, both to test his credibility
and the efficacy·and effect of the treatment.

**Evidence of Mental Capacity.** Evidence that a testator left prop-
3  erty to a well to do relative, to the practical exclusion of
others to whom she was under obligations, is competent on
the question of mental capacity.

**Same.** Declarations of the deceased husband of testatrix, through
4  whom she acquired the devised property, as to what he intended to do with his property, made prior to the will in question and not made in the presence of testatrix were hearsay
and incompetent on the question of testatrix's capacity.

**Depositions:** NOTICE. A notice of taking a deposition by the con-
5  testant of a will, served on the principal legatee, who had filed
objections to a prior will and in an affidavit had described herself as proponent of the contested ·will, was sufficient under
Code Section 4689, requiring the service of notice on the opposite party although at the time of service there was no appearance of record in support of the will. ·

**Evidence:** PUBLIC RECORDS. Where there was no provision of ·law
6  for keeping in the Recorder's office a book known as " Miscellaneous " records, and no provision making the record of an
instrument recorded therein competent evidence, the admission
of such record was error.

**Undue Influence:** SUBMISSION OF ISSUE. Where the evidence tends
7  to show a condition of mind rendering a testatrix susceptible
to the influence of those about her, the issue of undue influence
should be submitted to the jury.

**Wills:** EXECUTION: INSTRUCTION. Where it appeared that the con-
testant of a second will on the ground of undue influence, was
the principal legatee in a prior will and there was no question
as to the due execution of both, the court, to avoid confusion,
should have told the jury that both were duly executed; and
an instruction that the second will was properly executed and
the first should only be considered on the question of its formal
execution, was erroneous.

**Mental Capacity:** BURDEN OF PROOF. The contestant of a will on the
ground of undue influence need only show that the testatrix was
suffering from a mental disease of a permanent and progressive
nature, at and prior to the execution of the will, to shift the
burden on the question of competency to the proponent.

**Opinion evidence:** NONEXPERTS. The opinion of a nonexpert wit-
ness in a will contest must be confined to matters previously
detailed by him.

**Wills:** PROBATE: JOINDER OF ISSUE. No answer or reply is required
to raise an issue on objections filed to the probate of a will.

*Appeal from Iowa District Court.*— Hon. O. A. Byington,
Judge.

Monday, March 12, 1906.

This is a contest over the will of Martha Jones, de-
ceased. Contestant claims that testatrix was of unsound
mind when the will was executed, and that it was obtained
from her through the undue influence of Mary Jones and her
husband, David. Another and prior will of testatrix was
also filed for probate, and to this objections were made by
Mary J. Jones, who claimed that this will was executed
when testatrix was unsound of mind, and that the same was
brought about through the undue influence of Charles G.
Jones. The case was tried to a jury which found against
the contestant of the will first referred to, and he, Charles
G. Jones, appeals.— *Reversed.*

*Thomas Stapleton, Yoss & Wallace,* and *R. W. Pugh,*
for appellant.

*J. M. Dower* and *C. Hedges,* for appellee.

Deemer, J.— It does not appear who filed either will for probate but the testimony and the record show that John F. Stephens was and is the proponent, or one of the proponents of the will, over which this controversy arises. From the statement already made it appears that testatrix executed two wills, one of date July 5, 1900, and the other August 30, 1900. In the first she made 'Charles G. Jones, whom she described as " her beloved friend and companion who had lived with her so long," her sole devisee.

In the second she devised her property to her daughter, Mrs. Mary T. Jones, upon condition that she pay to Charles G. Jones the sum of $200 and perform some other stipulations not necessary to be here mentioned. The two wills were filed for probate on the same day, to wit, December 10, 1903, testatrix having died during the early days of that month. The first will is in the case as a basis for contestant's standing in court, for without it, he has no interest, not being related in any way to the deceased. The case went to a jury on the issues tendered as to the validity of the second will in point of time; and we shall hereafter refer to the two wills as the first and the second. That both wills were executed in conformity to the statute is conceded, and the only issues as to the second will were as to the mental capacity of the testatrix, and as to whether or not it was procured through undue influence. The questions presented upon this appeal all relate to one or the other of these two issues.

Contestant pleaded and attempted to show that testatrix was afflicted with senile dementia at the time she made the second will; and that she was prompted to make it by the principal devisee therein, Mary Jones and her husband, David. Appellant's counsel assign thirty-seven or more errors committed by the trial court, although in argument they contend for but twenty-six. It is manifest that within the limits of an ordinary opinion it is impossible to treat of each of these; nor is it necessary, for many of the claimed errors are of the same general nature and may be treated

together. We shall first take up rulings on evidence which seem to be important.

John W. Jones was the husband of Martha, the testatrix; and he died testate. Martha elected to take under the law, and it is the one-third of her husband's estate which she attempted to dispose of by will. A witness

1. WILLS: evidence: contents of documents.

was permitted over contestant's objections that it was not the best evidence, to give the contents of John W.'s will. This was manifestly erroneous. He was also asked as to his understanding as to who was to take under that will. Surely no argument is necessary to demonstrate the incorrectness of this ruling. That it was prejudicial appears from the answer to the effect that it was his understanding that Martha was to have the property during her life, and then it was to go to Mary, and then to her children if any was left. It is easy to see how this testimony might have prejudiced the case.

A physician who attended testatrix during her sickness and at the time the will was executed was a witness for proponent. He testified that he found her in the summer

2. TESTAMENTARY CAPACITY: evidence of physician.

of 1900, pulseless and in a profuse cold sweat; that she had bowel and bladder trouble, and that, during the progress of the disease, she had heart trouble. He also testified that there was a gradual improvement in her condition until his visits finally ceased in October of that year. He also said that he visited her on the very day the will was signed. He further said that when he was called in June she had a high fever which subsided in three or four weeks, and that there was a gradual improvement in her condition. On cross-examination he testified that she had toxæmia from the start, and that she lay in a stupor more or less from the early part of her sickness. Further he stated that every organ of her body was more or less affected with toxæmia. He was then asked if the patient's mind was affected by this toxæmia. Objection to this question was sustained. We think it should have been answered. Testatrix's physical condition was not in

issue, save as it bore upon her mental, and the doctor's testimony, if it amounted to anything, was to show her mental condition as affected by her physical on the day the will was executed.    The effect of his testimony was that her physical condition had materially improved from what it was when she was first stricken, and that when the second will was executed, she was much better than she had been theretofore. On cross-examination it is proper to meet any inferences that may be drawn from the witnesses' testimony in chief.

Moreover the witness being an expert, and having given a diagnosis of the case, and indicated his treatment it was proper to cross-examine him fully as to her condition both of mind and body in order to test his credibility, the efficacy of his treatment and the effect thereof as tending to cure or alleviate the suffering and diseased condition which he said he reduced. *Bever v. Spangler,* 93 Iowa, 608.    The same witness was asked if she was suffering from senile dementia while he was treating her.    This question should also have been answered for reasons above stated.

David Jones, husband of Mary, was asked as to how much property he owned in July, 1900..    Over proponent's objections he was not permitted to answer.    Contestant then offered to show that he had more than $30,000 worth of property.    The question should have been answered. *Manatt v. Scott,* 106 Iowa, 203, and cases cited.

3. Evidence of mental capacity.

Proponents were permitted to show over contestant's objection, declarations of John W. Jones, husband of testatrix, who died some time before the making of the wills in controversy, as to what he was going to do with his property, and for contestant Charles G. Jones.    These declarations were not made in the presence of Martha Jones, and were therefore hearsay, incompetent, and immaterial to any legitimate inquiry in the case.

4. Same.

II. After the two wills had been filed, and on March 5, 1904, attorneys for contestant caused notice to be served upon

Mary J. Jones, designated as proponent, of the suing out of a commission to take the deposition of one

5. DEPOSITIONS: notice. Abram Jones, a resident of Ohio. The commission issued, and the deposition was taken and filed. John F. Stephens as proponent moved to strike out this deposition because the notice to Mary J. Jones as proponent was null and void, she not being the proponent in fact. This motion was sustained, and complaint is made of the ruling. The record does not disclose who filed the second will. During the trial John F. Stephens testified that he was the proponent, and the case seems to be docketed as if he were, although in an application to take the deposition of a witness during the trial, Mary J. Jones in an affidavit filed for that purpose described herself as proponent, and as such secured an order for the taking of that deposition. Mary J. Jones was the principal, if not the sole, legatee or devisee under the second will, and Stephens was named therein as executor. At the time the notice was served there was no attorney of record in support of the will; but at that time Mary J. Jones by attorney had filed objections to the first will. Code, section 4689, provides for notice in such cases " on the opposite party." Generally speaking a proponent is one who propounds a will for probate. Our statutes provide that a will may be deposited with the clerk of the courts, who shall file and preserve it until testator's death. Section 3277. And they also recognize that any one may be the custodian of a will. Provision is also made to the effect that the custodian must as soon as he is informed of testator's death file the will with the clerk. Code, section 3282. When a will is produced, the clerk shall open and read the same, fix a day for probating and give notice thereof. Code, sections 3283, 3284. And it also provided that when a will is contested either party shall be entitled to a jury trial. Section 3283.

While one named in a will as executor is not such until the will is admitted to probate, yet it seems to be his duty to or at least he may propose a will for probate in which

he is named as executor. *Meeker v. Meeker,* 74 Iowa, 352. But it is also true, we think, that any person interested may propound a will for probate. *Mower* v. *Verplanke,* 105 Mich. 398 (63 N. W. 302).

When contestant in this case served his notice of suing out the commission, the records did not show who was the proponent of the will. They did indicate, however, that Mary J. Jones, devisee under the second will, had filed objections to the probate of the first; and that she being the principal, if not the sole devisee under the second, was the real party in interest. Add to this the fact that during the trial she described herself as proponent and secured the taking of a deposition as such for use in this case, we think there is enough to justify the service of notice upon her of the suing out of a commission to take the deposition of a witness on behalf of contestant. She surely should not be allowed to profit herself as a proponent, and then to deny this relation when it seemed of advantage to her to do so. As the real party in interest, there being no other person named at that time as proponent we think she was one upon whom notice might be served. It must be confessed that our statutes are not very comprehensive regarding practice in such cases; but under the facts of this case we believe the notice was sufficient, and that the deposition should not have been suppressed.

Proponent took a deposition which contestant moved to suppress because not taken and certified in accord with sections 4700 and 4702 of the Code. It is enough to say that these sections were not followed and that the deposition should have been suppressed.

III. Proponent was permitted to introduce what was called a "Miscellaneous Record" of Iowa county, showing what was called a binding out to John W. Jones of

EVIDENCE: public records.

Charles Geisenhouse, now known as Charles G. Jones, a minor and an inmate of the poor farm, until he should arrive at the age of eighteen years. This was apparently done by the board

of supervisors September 4, 1879, and the recorded instrument declared that he should be treated by John W. Jones " in all respects as his child save as to inheritance." This record shows the purported signatures of the members of the board of supervisors and of John W. Jones; but the original paper was not acknowledged by any one. This record was offered and received over contestant's objections. No record of the board of supervisors was offered or introduced and there was no provision of law at that time for the recording of such instruments. As it was not acknowledged there is also doubt of its recordability in any event. There seems to have been no authority of law for the keeping of such miscellaneous records at the time this record was made, and no provision making the record thereof competent evidence. It was clearly incompetent then for any purpose. *McCollister v. Yard,* 90 Iowa, 621. We are not to be understood as holding that the recorder may not keep such a book for the recordation of such miscellaneous papers as the Legislature deems suitable or proper for placing upon the county records, and which do not properly belong in any other book. The point we wish to emphasize in this connection is that we find no statute for the recordation of such instruments as we are now considering, and nothing making the record thereof admissible in evidence. Moreover, even if competent, the testimony was wholly immaterial to any issue in the case, and could only have been used to prejudice the jury against the contestant. Other errors committed by the trial court in its rulings on evidence need not be considered as they are not likely to arise on a retrial.

IV. At the conclusion of contestant's evidence, proponent moved to take the issue of undue influence from the jury. This motion was sustained. We think the issue should have gone to the jury. There was some

7. Undue influence: submission of issue.

testimony to sustain it; and the evidence also tended to show such a condition of testatrix's mind that she might easily have been influenced by those who were constantly with her, and who, according to some

of the testimony, were instrumental in securing this second will. In this respect the case is ruled by *In re Glass' Estate,* 127 Iowa, 646.

V. Coming to the instructions we find that the court after stating that, according to the undisputed testimony, the second will was formally executed, said that the validity

8. WILLS: execution: instruction.

of the first will was not in issue, and that the jury should only consider it for the purpose of determining whether its formal execution was in the manner required by law. In this there was confusion and liability for mistake upon the part of the jury. There was as much testimony in support of the formal execution of the first as of the second will, and the court should have told the jury that each was executed in form as provided by law. The error was intensified, because the jury was nowhere instructed as to what was required in order to execute a will according to law.

VI. In instruction 11 the court said:

If you find by a preponderance of evidence that on and prior to August 30, 1900, the testatrix was suffering from some disease of the mind of a *progressive and permanent nature,* amounting to unsoundness of mind as herein defined, *and you further find by a preponderance of the evidence that the said condition is found to have existed after the 30th day of August, 1900, the burden will be on the proponent to show by a preponderance of the evidence that said instrument was executed at a time when the testatrix understood the nature of the transaction, and if not shown you will find for the contestant.* (The italics are ours.)

This instruction was misleading and clearly erroneous. All that contestant was required to do in order to shift the burden was to show that on and prior to August 30th testa-

9. MENTAL CA- PACITY: bur- den of proof.

trix was suffering from a disease of the mind of a permanent and progressive nature amounting to unsoundness. There was testimony from various witnesses which tended to show that after August 30th testatrix was much improved in health; hence

the jury may have concluded that no burden rested upon proponents.   As sustaining our conclusions see *Bever v. Spangler,* 93 Iowa, 601; *Blake v. Rourke,* 74 Iowa, 522; *In re Knox's Will,* 123 Iowa, 24.

Instruction No. 13 also complained of is not clear and was likely to confuse the jury.   It is enough to say that a trained mind might give it a proper construction; but that a jury was likely to be misled thereby.   We do not set it out, as the point is so clearly ruled by *Hall v. Rankin,* 87 Iowa, 264, and *Stutsman v. Sharpless,* 125 Iowa, 335, that we need do no more than point out the difficulty so that it may be avoided on a retrial.

VII. In another instruction the court said in effect that the opinions of nonexpert witnesses based upon personal knowledge and upon declarations of testatrix known to them

10. OPINION: evidence: nonexperts.

should be considered and given weight, taking into consideration the knowledge upon which they were based.   As this did not confine the opinions to such as were based upon matters detailed by the witnesses who gave them as the basis for their conclusion, the instruction was erroneous.   *Furlong v. Carraher,* 102 Iowa, 358, *State v. Robbins,* 109 Iowa, 654.

VIII. Contestant's motion in arrest of judgment was properly overruled.   Under our system of probate procedure,

11. WILLS: probate: joinder of issue.

no answer or reply is required in order to make an issue on the objections filed to the probate of a will.   Courts of some states require this, but that is not the practice here.   Moreover the case was tried as if an issue was properly tendered, and that is an end of the matter.

Appellee's motion to dismiss the appeal, which was submitted with the case, is overruled.   A judgment may be appealed from, although the journal entry has not been signed by the judge.   The statute as to the signing of the record by the judge is directory only.

For the errors pointed out, the judgment must be, and it is, *reversed.*