LENA MONTAGNE MILEHAM, Apellee, v. JOHN F. MONTAGNE ET AL., Appellants.

**Will contest:** MENTAL CAPACITY: SUBMISSION OF ISSUE: EVIDENCE. Where, as in this case, the defendants in a will contest failed to move for a directed verdict and asked the court to submit an interrogatory on the question of mental capacity of the testator, which was done, this amounted to a practical concession that the case was one for the jury. But aside from this fact the evidence was such as to clearly require a submission of the issue.

**Same:** IMMATERIAL EVIDENCE. Where a testator gave nothing to one of his daughters for the reason that her husband would spend it all, as stated in his will, evidence of the personal habits of the husband at the time of trial was immaterial.

**Same:** CROSS-EXAMINATION: DOCUMENTARY EVIDENCE. The cross-examination of experts need not be confined in asking hypothetical questions to the facts disclosed by the testimony; and the court has a wide discretion in determining the range of inquiry. Thus, in this action to set aside a will on the ground of mental incapacity, documentary evidence consisting of notes and the records of actions against the testator; sheriff's deeds, garnishments, warrants of arrest for violation of injunction; the record of the commitment of testator to an insane hospital; and deeds made by him to his children after the execution of his will, were admissible as part of his history and as bearing upon his mental condition.

**Same:** MENTAL CAPACITY: EVIDENCE. It was claimed by contestants in this action that testator's mind had been affected by the murder of a relative several years prior to the execution of his will and it is held that evidence of the circumstances of the murder was admissible, on the promise of counsel to show that testator

knew the circumstances testified to, and that these matters had affected his mind.

**Same.** Evidence that the testator had been committed to a hospital for the insane, although several years prior to the making of his will; what took place between the testator and the witness while he was being taken to the hospital; and his subsequent discharge as sane; were competent on the question of his mental capacity at the time of the execution of his will.

**Same:** COMMITMENT AND DISCHARGE FROM HOSPITAL FOR INSANE: EVIDENCE: INSTRUCTIONS. The discharge as sane of one committed to a hospital for the insane is *prima facie* evidence of his sanity, although not conclusive, and casts the burden upon one attacking his will subsequently made to show that he was insane at the time of the execution of the will; and such commitment and discharge are competent evidence for the consideration of the jury in determining his mental condition when the will was executed.

**Wills:** EVIDENCE: INEQUITABLE PROVISIONS: INSTRUCTIONS. Inequality and inequity in the provisions of a will will not alone warrant the presumption of mental incapacity, but they may and should be considered as circumstances in connection with other facts bearing on the condition of the testator's mind at the time of executing the will, in determining his mental capacity.

**Same:** MENTAL CAPACITY: EVIDENCE: INSTRUCTION. Evidence of the fact that a testator transacted his own business and seemed to be mentally competent to those with whom he came in contact, while competent on the question of capacity, will not conclusively establish his sanity; as a state of mental unsoundness may still exist which would render him incompetent to make a will; and impairment of the mental faculties which destroys testamentary capacity disqualifies one from making a will, even though it has not reached the state of absolute imbecility.

*Appeal from Cherokee District Court.*—HON F. R. GAYNOR, Judge.

TUESDAY, APRIL 5, 1910.

ACTION to set aside the probate of the last will and testament of John G. Montagne and to set aside the will because of mental incapacity and undue influence. The

case was tried to a jury, resulting in a verdict and judgment setting aside the will because of the mental incapacity of the testator. *Affirmed.*

*William Mulvaney,* for appellants.

*J. A. Miller* and *Herrick & Herrick,* for appellee.

DEEMER, C. J.—Appellants assign forty-six errors, and it is manifest that it would be impossible in the course of an ordinary opinion to consider each and every assignment; nor is it necessary to do so, for many of them are not argued, and those argued may well be grouped into a few classes or divisions for the purpose of an opinion. The chief contentions made for appellants are that the verdict has no support in the testimony; that the court erred in its rulings on evidence; erred in its instructions given to the jury; and in refusing certain of those asked by proponents.

I. Testator was a German by birth, and, as near as can be told, was sixty-eight years old at the time of his death. He died June 12, 1907, leaving his wife and six children surviving. His heirs were all of age at the time of his death. The will was executed on June 2, 1907, while testator was ill, and was admitted to probate without appearance or contest. This action was commenced June 9, 1908, to set aside the probate of the will and the will itself because of testator's mental incapacity and for the alleged undue influence of certain of the devisees and legatees under the will. The latter issue was not submitted to the jury and need not be considered, save as it may bear upon certain rulings of the court made during the trial.

The will gave his widow a life estate in all his property in lieu of dower, provided she remained unmarried, and of the remainder he gave plaintiff the sum of

$10, provided for the support of a daughter Annie during her life, appointed a testamentary guardian for her, and gave all the residue of his estate to his three sons and the one daughter not already mentioned by name. In June of the year 1900, testator was adjudged insane and committed to the hospital at Clarinda, from which he was discharged in October of the same year. In August of the year 1893, testator's sister and her husband, who had lived on one of testator's farms near Cherokee, were murdered, and this made a very profound impression on his mind. At one time he laid this murder at the door of his brother, John C. Montagne. This murder prayed upon his mind down to the time of his death and profoundly influenced all his mental processes. He had a sister who was insane, and one of his daughters is mentally incompetent. A great deal of testimony was taken tending to show that testator labored under delusions and hallucinations which were the product of a diseased mind, and testimony both expert and nonexpert was taken upon the condition of his mind.

Defendants did not move for a directed verdict, but, on the contrary, in effect asked the court to submit the matter of mental incapacity to the jury, and had a special interrogatory submitted to the jury upon

**I. Will contest: mental capacity: submission of issue: evidence.** this proposition. This was a practical concession that the case was one for a jury. *In re Betts*, 113 Iowa, 114. Aside from this, however, we think the case upon this issue was clearly one for a jury. It is not our custom to set out the testimony upon which we base our conclusions, and no useful purpose would be served in departing from the rule in this particular case. Suffice it to say that there is nothing in defendants' first proposition.

II. Something like thirteen rulings on the admission and rejection of testimony are challenged; but we shall only notice those which are deemed important or con-

trolling. Several of the propositions involved have already been decided by this court, and these need not be noticed.

Defendants offered to show the personal habits of plaintiff's husband at the time of trial. This in itself was immaterial to any inquiry in the case. The witness had already testified that testator said he did not leave anything by will to plaintiff for the reason that if he did so her husband would spend it all, and that his wife and his boys would take care of her in any event. The inquiry as to the habits of the husband at the time of trial was not important. One other question put to this witness involved a conclusion as to testator's state of mind at the time he made the will, and this was manifestly incompetent.

2. SAME: immaterial evidence.

Complaint is made of the cross-examination of one of the experts used by defendants. It is said that too great latitude was given, and that hypothetical questions were propounded on this cross-examination which had no foundation in the testimony. It is a general rule that upon the cross-examination of experts counsel are not confined, in putting hypothetical questions, to the facts disclosed by the testimony, and it is also a general rule that a wide discretion is lodged in the trial court in the range of inquiry to be made on cross-examination. Plaintiff was permitted, over defendants' objections, to offer a large amount of documentary evidence. These were notes and records of actions and proceedings in various courts against the testator, sheriff's deeds, garnishments, warrants of arrest for violation of injunction, etc., covering quite a period of time, but all showing testator's conduct and business transactions for a period of time material to the issue in the case. We discover none which were improperly admitted; in fact, they all bore more or less upon testator's conduct and were a part of his personal history. They were

3. SAME: cross-examination: documentary evidence.

admissible as such. Among other things was the record of commitment to the insane hospital, and also deeds made by testator to various ones of his children after the will was made. These were surely admissible. Counsel for appellant does not point out any specific document which he thinks was inadmissible, and we shall not look through the great number complained of *en masse* to see if any special one was inadmissible.

Plaintiff was permitted to prove, over defendant's objections, the circumstances of the Schultz murder, which is the one already referred to, and some of the details connected therewith. This was done after plaintiff's promise to show that testator knew of all the things disclosed by the witness, and that these matters had an effect upon testator's mind. In this there was no error. If plaintiff did not come forward with the promised proof, defendants' remedy was to move to strike. This was not done, manifestly for the reason that plaintiff made the promise good. In any event, however, defendants may not complain of the rulings. Plaintiff was permitted to prove the effect of the Schultz murder upon testator's mind. This was clearly competent, although the murder occurred something like thirteen or fourteen years before the will was drawn. If the witnesses are to be believed, this murder was a great mental shock upon testator's mind, and was the producing cause of his mental disorders. It was competent, then, to prove that fact.

4. SAME: mental capacity: evidence.

Another witness was permitted to prove what took place between himself and the testator while he was taking him (testator) to the insane hospital. Although this was something like seven years before the making of the will, the testimony was proper and competent. It tended to show testator's mental unsoundness at that time, and his condition at that time was material, even though it appears that he was subse-

5. SAME.

quently discharged from the hospital under the belief that he was restored to sanity. *State v. Felter*, 25 Iowa, 68. Insanity, once established, is presumed to continue until the contrary is shown. *In re Knox's Will*, 123 Iowa, 24. Of course, discharge from the hospital is evidence of a change in mental condition; but it is not conclusive. The finding of lunacy and the commitment to the hospital were admissible in evidence, as also was the discharge; neither, however, being conclusive. We discover no prejudicial error in the rulings on evidence.

III. The complaints regarding the instructions largely revolve around the central thought advanced by defendants' counsel to the effect, that, if testator was unsound of mind, his insanity was not chronic, but partial. The testimony offered by contestant tended to show chronic or general insanity, and not partial with lucid intervals; but, even were this not so, the trial court instructed that the burden was upon contestant to show testator's mental unsoundness at the very time the will was executed.

Going now to the specific instructions complained of, we shall notice but a few of them. Others which are complained of have been distinctly approved by this court many times and need not be noticed. Paragraph 5 of the instructions reads as follows:

It appears that some time in the month of June, 1900, the said John George Montagne was adjudged insane by the commissioners of insanity of this county; that he was taken to the state hospital for insane at Clarinda, Iowa, for treatment; that he was subsequently discharged from said hospital. You are instructed that this is *prima facie* evidence, but not conclusive, that he had recovered from the condition which caused his incarceration in the hospital, for while it is true that all people are presumed to be sane, yet when it is shown at any time that a contrary condition exists, and that he is in fact insane, this condition is presumed to continue until the

6. SAME: commitment and discharge from hospital for insane: evidence: instructions.

contrary appears, and, where one is discharged by the proper authorities after being adjudged insane, the presumption is that he has resumed his natural and normal state of mind, and the burden would rest upon the party alleging insanity at a later period to establish by a preponderance of the evidence the existence of such insanity; but, however, it is proper for you to consider, with all the other evidence in the case, the fact that the party was at one time insane in determining whether or not insanity existed at a later time and at the time of the execution of the instrument purporting to be his last will.

As opposed to this, defendants asked the following:

Par. 3.  Evidence has been introduced showing that the testator, John George Montagne, was adjudged insane, by the commissioners of insanity of Cherokee county, Iowa, in the month of June, A. D. 1900, and that he was thereafter taken to the state hospital for the insane at Clarinda, Iowa, for treatment, and the undisputed evidence further shows that the testator was discharged from the state hospital as cured.  You are therefore instructed that no presumption of insanity at the time of the making of the will in question could be predicated or indulged in upon this adjudication, for, while insanity, when once proven, is presumed to continue until the contrary is shown, the fact that the testator was discharged cured rebuts the presumption of insanity, and the said testator is forever afterwards presumed to be sane until the contrary appears.  Therefore you are instructed that the fact that the said John George Montagne was adjudged insane in the year 1900 will not now relieve the plaintiff of proving his insanity at the time of the execution of the will in question.

The difference between the one given and the one asked is this:  That in the one given the jury is authorized to consider the adjudication of insanity in arriving at its conclusion regarding testator's condition of mind when the will was executed, while in the one asked this determination is eliminated.  The instruction given seems to us to be correct.  The fact of insanity at one time being

established, such fact may be considered in determining the condition of the person's mind at a subsequent period, although such person may have been discharged from the place of detention as cured. It is well known that mental diseases are subject to recurrence, and it is perfectly proper to show that one is predisposed to insanity, whenever the condition of his mind may become the subject of judicial inquiry. *Dicken v. Johnson*, 7 Ga. 484; *Terry v. Buffington*, 11 Ga. 337 (56 Am. Dec. 425); *Rodgers v. Rodgers*, 56 Kan. 483 (43 Pac. 779); *In re Knox*, 123 Iowa, 24. The weight of such prior finding of insanity is for the jury, depending upon the nature of the disease, whether temporary or chronic, the result of an injury from which complete recovery may be expected, or the offspring of congenital defects, or of such a nature that its recurrence might reasonably be expected. The court instructed that testator's discharge was *prima facie* evidence of recovery, and cast the burden upon plaintiff of showing that, notwitstanding his discharge, testator was insane when the will was executed. This states the law as we understand it. See Code, section 2288, which expressly provides that a discharge from the hospital shall be *prima facie* evidence of recovery.

Instruction No. 7 reads:

You are instructed that in determining the question of whether the testator, John George Montagne, was, at the time of the making of the instrument in question, a man of sound mind, and had sufficient mental capacity to make a valid will, you may take into consideration the terms and provisions of the will itself, whether the same are just or unjust, reasonable or unreasonable, natural or unnatural, and you may take into consideration the evidence as disclosed to you upon the trial relating to the financial condition of the plaintiff, daughter of said testator, and the financial condition of the other devisees under said will at the time of the execution of said instru-

7. WILLS: evidence: inequitable provisions: instructions.

ment, and also the extent of the estate of the testator as the same existed at the time of the execution of said instrument; but the apparent inequality or inequity in the provisions of the will will not alone warrant the presumption of mental incapacity, but they may and should be considered as circumstances in connection with other facts bearing on the condition of the testator's mind at the time of executing the will.

This instruction is vigorously assailed. It appears to be in accord with our own cases and is sustained by numerous precedents from other jurisdictions. *Manatt v. Scott,* 106 Iowa, 216; *In re Wharton,* 132 Iowa, 723; *Hardenburgh v. Hardenburgh,* 133 Iowa, 6; *Stutsman v. Sharpless,* 125 Iowa, 341; *Smith v. Ryan,* 136 Iowa, 339; *Wallen v. Wallen,* 107 Va. 131 (57 S. E. 596); *Graham v. Deuterman,* 206 Ill. 378 (69 N. E. 237); *Knox v. Knox,* 95 Ala. 495 (11 South. 125, 36 Am. St. Rep. 235); *Peck v. Carey,* 27 N. Y. 9 (84 Am. Dec. 226); *Rasdall v. Brush,* 31 Ky. Law Rep. 1138 (104 S. W. 749); *Sim v. Russell,* 90 Iowa, 656. It will be observed that the instruction specifically says that inequalities in the will will not alone warrant the presumption of mental incapacity. This qualification makes the instruction invulnerable to attack.

Instruction No. 8 given by the court reads as follows:

You are instructed that the fact, if shown, that the testator transacted his own business, and to all outward appearances seemed to be of sane and sound mind to those with whom he came in contact in a business or social way, while competent to be considered on the question of sanity, does not of itself conclusively establish sanity, and you are instructed that a state of mental unsoundness may exist in such person which would render him incompetent to make a will, notwithstanding his apparent sanity to those with whom he comes in contact and who

8. SAME: mental capacity: evidence: instruction.

are not experts on the subject of insanity; and in determining whether or not the testator in this case had testamentary capacity, or was wanting in testamentary capacity at the time of the execution of the instrument, Exhibit A, you should take into consideration and carefully weigh all the evidence introduced and submitted to you bearing on this subject, and therefrom, aided by the instructions herein given you, determine and say in your verdict what the very truth of the matter is. You are instructed that any impairment of the mental faculties which destroys testamentary capacity, as hereinbefore defined, disqualifies a person from making a will, even though it has not reached the state of absolute imbecility.

This instruction is also challenged. We think it is correct. In Underhill on Wills p. 134, the learned author says: "But a person who is permanently insane may, to all outward appearances, act and talk in the most rational manner, and yet there be no real abatement of his malady. He may be just as unsound in his calmer mood as in his fits of raving." Judge Cooley, in *People v. Garbutt,* 17 Mich. 16 (97 Am. Dec. 162), in writing the opinion of the court, thus expressed himself regarding this matter: "Those questions which relate to the discovery and proof of insanity in criminal cases are perhaps the most difficult of any with which courts and juries are compelled to deal. Mental disease is itself so various in character, so vague, sometimes in its manifestations, and so deceptive, especially in its early stages, and its causes are so subtle and so difficult to trace, that the most experienced experts are sometimes obliged to confess that, however careful and thorough their investigations, they still prove unsatisfactory, leaving the mind not only in a condition of painful uncertainty upon the principal question whether mental disease actually exists, but when its actual presence is demonstrated, failing utterly, in many cases, to trace it to any sufficient cause." These quotations lucidly state a rule which is well known, not only to all alienists, but

to observing laymen as well. It was perfectly legitimate to state the rule to the jury in this case.

Other instructions are challenged, but they seem to be in accord with our previous decisions and need not be further noticed. Defendants asked ten instructions, none of which were given in the exact terms in which they were written. In so far as they are correct, they were embodied in the charge as given.

Counsel rely largely upon *Kirsher v. Kirsher,* 120 Iowa, 337, and *Glass v. Glass,* 127 Iowa, 646, in support of the appeal. These cases do not run counter to any views herein expressed, or to any of the rules given by the trial court in its charge. The burden was not cast upon defendants to show that testator had recovered his sanity. On the contrary, the trial court clearly put this burden upon the plaintiff.

The record is singularly free from error, and no good ground is shown for a reversal.

The judgment therefore must be, and it is, *affirmed.*