DECISION AND JUDGMENT ENTRY
This is an appeal from a Hocking County Common Pleas Court, Probate Division, judgment which found a "de facto guardianship" over the estate of Sara E. Hinerman. The following error is assigned for our review:
 "THE COURT BELOW ERRED IN ASSERTING A `DE FACTO' CONTINUING JURISDICTION OVER A NON-RESIDENT ADULT WARD WHOSE STATUS AS WARD WAS ORIGINALLY ESTABLISHED SOLELY ON THE BASIS OF MINORITY."
The facts in this case are relatively undisputed. Sara E. Hinerman was born on March 10, 1976. From birth Sara has suffered from "cerebral palsy with mento-motor retardation" as well as a host of other related medical conditions. She was a member of the "Dalkon shield" class action litigation and, in 1993, settled her claim with the pertinent defendants.
On September 8, 1993, Sara's parents filed an "application for appointment of guardian of minor" with the Probate Court.[1] The stated reason for the application was that "authority [was] required to settle a claim on behalf of said minor and to thereafter administer the minor's estate." The following month the Probate Court issued two judgment entries that appointed the parents as co-guardians of Sara's estate and appointed Appellant Marie Hinerman (n/k/a Marie Patton), Sara's mother, as sole guardian of Sara's person.
At the time the parties created the guardianship, Sara was seventeen years of age. After Sara turned eighteen, both parties continued to operate as if the guardianship was still in effect. Various accounts and applications were filed over the ensuing years. In May of 1996, Sara moved to Florida with appellant and they both currently reside in that state.
During a 1999 hearing, one of the parties raised a question as to whether the Probate Court had jurisdiction over Sara in view of the fact that she had reached the age of majority and was no longer an Ohio resident. The trial court gave each party the opportunity to submit memoranda on the issue. Appellee Roger Hinerman, Sara's father, argued that although Sara's guardianship may have initially been created because his daughter was a minor, all parties had continued to operate as if the guardianship was created because Sara was incompetent. Appellee also argued that Sara had more "contacts" with Ohio than any other place.
Appellant argued that whatever basis the parties may have mistakenly operated under as to the reason for the existence of the guardianship, the fact remains that the guardianship was created solely for the reason that Sara was a minor. Appellant further argued that (1) no basis exists for converting a minority guardianship into one for an incompetent, and (2) the minority guardianship automatically terminated once Sara reached the age of majority. Thus, appellant concluded, the Probate Court had no further jurisdiction over this matter.
At a November 8, 1999 hearing no disagreement existed that Sara is incompetent and needs a guardianship to further monitor/control her financial affairs.[2] Appellant also testified that she had initiated guardianship proceedings in Florida and that she was amenable to her ex-husband (appellee) continuing to serve as co-guardian of Sara's estate.
On December 15, 1999, the trial Court issued its judgment and found,inter alia, that a "de facto guardianship of the estate of Sara Hinerman" exists. The court acknowledged that it found "no case law dispositive" of this issue. However, in a very detailed explanation of its reasoning, the court noted that the parties had treated this case as if the guardianship had been created on the basis of Sara's incompetency. The court noted that the "singular act, or more accurately, omission that would take this case from a de facto guardianship to a de jure guardianship" was the investigation of Sara's incompetency which the parties do not dispute. This appeal followed.
In her sole assignment of error, appellant argues that the trial court erred by adjudicating the existence of a "de facto" guardianship. We agree.
Our review of the court file reveals that Sara's guardianship was initiated on the basis of Sara's minority. This reason appears in her parents' application[3] and this is the trial court's reason for appointing them co-guardians of Sara's estate.[4] We find nothing in the record to indicate that the parties sought guardianship on any basis other than Sara's minority or that the trial court appointed them as guardians for any reason other than Sara's minority. Moreover, there is no question that Sara has reached the age of majority.
The only statutory provision that addresses the status of a minority guardianship after the ward reaches the age of majority is R.C. 2111.46. This provision specifies that "[w]hen a guardian has been appointed for a minor before such minor is over fourteen years of age, such guardian's power shall continue until the ward arrives at the age of majority . . ." Obviously, that statute has no application in circumstances like the cause sub judice, in which the guardian was appointed after the ward's fourteenth birthday. Nevertheless, case law provides that a minority guardianship terminates once the ward is no longer a minor. See e.g.Seguin v. Gallo (1985), 21 Ohio App.3d 163, 164, 486 N.E.2d 1270, 1272;In re Estate of Streit (C.P. 1901), 12 Ohio Dec. 158, 161, as well as a number of treatises on the subject. See e.g. 2 Merrick-Rippner, Probate Law (1997) 98 101, §§ 66.01 66.10; 1 Anderson's, Ohio Probate Practice and Procedure (7th Ed. 1997) 563, § 32.02; 53 Ohio Jurisprudence 3d (2001) 203, Guardian and Ward, § 195. We therefore hold that the guardianship in the case sub judice terminated once Sara reached the age of majority.[5]
The trial court implicitly acknowledged that the minority guardianship had terminated. The court reasoned, however, that a "de facto" guardianship had also been formed on the basis of Sara's incompetence. The gist of the court's rationale was as follows:
 "The singular act, or more accurately, omission that would take this case from a de facto guardianship to a de jure guardianship, was the appointment of an investigator, issuance of a report, and the investigator's return filed with the Court speaking to delivery of notice of hearing on guardianship with ancillary explanation of potential ward's rights, to the potential ward. In all other regards, from September 3, 1993, the proceedings of Case No. 932012 have proceeded on the basis of guardianship proceedings for an incompetent. For this Court to find, in the face of all the referred to undisputed
facts of this case, that a guardianship of an incompetent has not existed since March 10, 1994, would be the worst form of legal fiction."
We have no doubt that the trial court struggled over this decision. Its judgment, issued more than a month after the hearing and spanning sixteen (16) pages, reveals considered and careful thought. Nevertheless, we must respectfully disagree with the underlying opinion that a de facto
guardianship is recognized by Ohio law.
It is axiomatic that probate courts are courts of limited jurisdiction and that probate proceedings are restricted to those actions permitted by law. State ex rel. Lipinski v. Cuyahoga Cty. Court of Common Pleas,Probate Div. (1995), 74 Ohio St.3d 19, 22, 655 N.E.2d 1303, 1306; Corronv. Corron (1988), 40 Ohio St.3d 75, 531 N.E.2d 708, at paragraph one of the syllabus; Schucker v. Metcalf (1986), 22 Ohio St.3d 33, 34,488 N.E.2d 210, 212. Thus, a probate court has jurisdiction over guardianships created pursuant to statutory directives set forth in R.C. chapter 2111. We are not aware of any provision in the Revised Code forde facto guardianships. Nor has the Ohio Supreme Court or any Ohio appellate court recognized the existence of such an entity. Given the limited jurisdiction of Ohio probate courts we are not inclined to do so in the case sub judice.
Although we understand the trial court's grave concern in this matter, we must also respectfully disagree with the conclusion regarding the necessity to recognize a de facto guardianship. The procedures outlined by the Ohio General Assembly for the creation of guardianships based on incompetency are there for a reason. Great care should be taken when declaring a person incompetent and appointing another to take over that person's affairs. Investigations and hearings are all part of the due process afforded alleged incompetents. This is so even in cases, like this one, when the reason for the guardianship is manifest and uncontested.
There is no doubt in our minds that the trial court, although well aware of these considerations, attempted to arrive at the most judicious and beneficial result possible under the circumstances of this case. However, we are constrained to follow the statutes as written and not as they perhaps should have been written. We therefore conclude that no defacto guardianship exists over Sara's estate and, in view of the fact that she has now reached the age of majority, she is now a legal adult. Thus, the guardianship based on minority has terminated.
Appellees offer a variety of arguments in support of the trial court's decision. First, they cite King v. Bell (1881), 36 Ohio St. 460, at paragraph one of the syllabus, wherein the Ohio Supreme Court held that when a court has jurisdiction to appoint a guardian on grounds of lunacy as well as infancy, the presumption is that the appointment covers both grounds. We believe that King has no bearing here, however, because the lower court in King made no express adjudication on which ground the appointment of the guardian was based. Id. at 470. In the instant case, we note that the trial court clearly created the guardianship on the basis of Sara's minority.
Appellee Roger Hinerman also cites Kennedy v. Walcutt (1928),118 Ohio St. 442, 448-449, 161 N.E. 336, 338, wherein the Ohio Supreme Court refused to allow a collateral attack on the appointment of a guardian after a "highly technical" procedural error in which the appointing court did not wait the required number of days before naming a guardian. We believe that Kennedy is also distinguishable from the causesub judice. We note that the error at issue in Kennedy involved a procedural issue, and no question existed as to the court's jurisdiction to create the guardianship. By contrast, in the instant case an incompetency based guardianship was not created. Thus, the trial court had no jurisdiction over Sara on that basis.
It is also argued that, in light of the time which has elapsed and considering that everyone has operated under the belief that a valid guardianship existed, any challenge to the guardianship's validity should be barred by theories of laches or estoppel. These arguments miss an important point, however. The guardianship at issue here is not just flawed; rather, we believe that the trial court had no jurisdiction over any such guardianship. Jurisdictional issues typically cannot be waived,see Weathersfield Twp. v. Trumbull Cty. Budget Comm.,(1992),69 Ohio St.3d 394, 395, 632 N.E.2d 1281, 1282; Shawnee Twp. v. AllenCty. Budget Comm.,(1991), 58 Ohio St.3d 14, 15, 567 N.E.2d 1007, 1009;Painesville v. Lake County Budget. Comm.,(1978), 56 Ohio St.2d 282,284, 383 N.E.2d 896, 898, and subject matter jurisdiction can be raised any time during the course of the proceedings. See Fox v. EatonCorp.,(1976), 48 Ohio St.2d 236, 238, 358 N.E.2d 536, 537; Jenkins v.Keller, Admr.,(1966), 6 Ohio St.2d 122, 216 N.E.2d 379, at paragraph five of the syllabus.
In summary, we conclude that Sara's parents did not seek to create a guardianship based on Sara's incompetency and one was not created by the trial court. Further, we found no provision in Ohio law for a de facto
guardianship. Accordingly, the trial court's jurisdiction in this matter terminated when Sara reached the age of majority. We find that the trial court had no authority under the Revised Code to continue to exercise jurisdiction over Sara's estate after she reached the age of majority.
For these reasons, appellant's assignment of error is well taken and we hereby reverse the trial court's judgment. In light of our disposition of appellant's assignment of error, we remand this matter in order for the trial court to wind up and officially terminate the guardianship.
It is ordered that the judgment be reversed, that the case be remanded for further proceedings. Appellant shall recover of appellees costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court, Probate Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J., Kline, J. Evans, J.: Concur in Judgment Opinion.
[1] The ward's parents are Marie Patton(f/k/a Marie Hinerman), appellant herein, and Roger L. Hinerman, appellee herein.
[2] Those affairs were apparently quite substantial. An amended list of assets remaining in the hands of the fiduciary showed financial accounts and other personal property totaling more than $1 million at the time of the proceedings below.
[3] Sara's parents filed Standard Probate Form No. 16.0 entitled "Application for Appointment of Guardian of Minor" which states that they sought guardianship over Sara because they needed authority "to settle a claim on behalf of said minor and to thereafter administer the minor's
estate." (Emphasis added.)
[4] The trial court's entries were included on Standard Probate Form No. 16.5 entitled "Appointment of Guardian of Minor." Those entries specified that the co-guardians were appointed because Sara was a minor and that a guardianship was necessary.
[5] Appellee Roger Hinerman argues in his brief that "there is only one way to terminate a guardianship and that is by the use of Section 2111.47." We disagree. The Revised Code, in fact, sets out several sections concerning the termination of a guardianship. See R.C.2111.45-R.C. 2111.471. Moreover, R.C. 2111.47 deals with termination for wards "other than minors." The guardianship at issue was for a minor and, thus, R.C. 2111.47 does not apply.