OPINION
{¶ 1} Defendant-appellant Marcus Holland appeals from his conviction and sentence, following a no-contest plea, to two counts of Aggravated Robbery with a Deadly Weapon, one of which included a firearm specification. Holland contends that the trial court erred when it overruled his motion to suppress incriminating statements, both oral and written, that he gave to police officers while in police custody. Although Holland was given the warnings required by Miranda v.Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, before making the statements, he contends that the statements were not voluntary. Specifically, he contends that the State failed to prove that he had the mental capacity to have made the statements voluntarily.
 {¶ 2} We conclude that there is a presumption that an adult has normal mental capacity, in the absence of any evidence of diminished mental capacity. There was no evidence at the suppression hearing that Holland had diminished mental capacity, either generally, or at the time he gave the statements to the police. The evidence in the record supports the trial court's conclusion that the statements were given voluntarily. Consequently, the judgment of the trial court is Affirmed.
 II {¶ 3} One evening in late February, 2005, two car jackings occurred in Dayton. The second car jacking resulted in a car chase, followed by a foot chase, followed by Holland's apprehension and removal to the Dayton Safety Building (headquarters of the Dayton Police), for questioning. Before any questioning began, Dayton Police Officer Timothy J. Bilinski, in the presence of Dayton Police Officer Justin Hayes, advised Holland of the probable charges, and reviewed with Holland his Miranda rights.
 {¶ 4} After Holland was advised of his Miranda rights, Bilinski told him, "If you would like to speak to me you have to sign the bottom of the form." Holland signed the form. Holland asked "how much time am I going to do for this?" Bilinski told him, "You're going to do time. I guarantee you you're going to do time for this." Both Bilinski and Hayes, who both testified at the suppression hearing, testified that Holland was not promised any consideration for giving a statement.
 {¶ 5} During the Miranda warnings, Holland indicated that he had completed ten years of education, which was noted on the form. He told the officers that he understood the rights waiver, and that he had had his rights read to him before this.
 {¶ 6} Both officers testified that Holland indicated no unfamiliarity with the English language, no diminished mental capacity, no physiological or psychological impairments, and no odor of alcohol or marijuana. Both officers admitted that they asked Holland no questions along these lines, but that they would have done so if they had had any reason to question his ability to understand what was going on.
 {¶ 7} After Holland gave the officers the basic story, which matched the information the officers already had, including the timelines of the incidents, Bilinski left the room to question others, while Hayes obtained Holland's written statement. After Holland wrote out an initial statement, Hayes posed written questions, in Hayes's handwriting. After each written question, Holland wrote out a response, in his own handwriting.
 {¶ 8} On cross-examination, when Bilinski was asked how he was able to determine that Holland was not under the influence of drugs, Bilinski responded:
 {¶ 9} "His appearance, how he spoke. Speech was not slurred. He was not overly sleepy, drowsy. Just a typical — how I determine it is by how they speak to me, whether they understand questions, are they coherent.
 {¶ 10} "I've dealt with a lot of individuals who are drug addicts. And I'm a pretty fair judge of whether someone at that particular time is under the influence, whether it be heroin, marijuana. It's pretty easy to tell."
 {¶ 11} When asked, on cross-examination, whether he thought it would be important to have asked Holland questions concerning his mental capacity, Bilinski responded:
 {¶ 12} "Once again, if I thought there was a question understanding, I would make that be known. I would ask questions.
 {¶ 13} "He understood everything that I asked him. He spoke intelligently. I did not get any indication of that. Those questions were not addressed."
 {¶ 14} For his part, Hayes testified that Holland was conscious, alert, and aware of what was going on, and that he did not do anything at all to indicate that he was confused.
 {¶ 15} At the outset of the questioning, Bilinski told Holland that: "We were going to have a `Come to Jesus' meeting." Bilinski did not explain what he meant by that, and was not asked. Hayes was asked about the meaning of this phrase, which he had heard Bilinski say to Holland:
 {¶ 16} "Q. When he says Come to Jesus, what does he mean by that?
 {¶ 17} "A. I can't tell you what Detective Bilinski meant by it. I can tell you what I know to be slang term on the street.
 {¶ 18} "Q. What's it mean?
 {¶ 19} "A. It means it's time to come clean on wrongdoing and just be forthright and repentant in your response.
 {¶ 20} "Q. And if you repent and so forth, then there's something good is going to happen as a result of it?
 {¶ 21} "A. I don't know that there's any consequences. They're not promised in the statement — it's just come to Jesus time.
 {¶ 22} "Q. But repenting itself is a purifying. The reason you say that is you're saying repent and, therefore, you'll be in good graces with God or Jesus or somebody?
 {¶ 23} "A. Sir, I don't use the term.
 {¶ 24} "Q. But it was used by Detective Bilinski with my client?
 {¶ 25} "A. That's correct."
 {¶ 26} Holland was charged by indictment with two counts of Aggravated Robbery, each with a firearm specification. He moved to suppress the statements he gave to the police. Following a hearing on the suppression motion, his motion was overruled. Thereafter, he pled no contest to two counts of Aggravated Robbery, one with a firearm specification, and the other firearm specification was dismissed. Holland was found guilty on the Aggravated Robbery counts and the remaining firearm specification, and was sentenced accordingly. From his conviction and sentence, Holland appeals.
 II {¶ 27} Holland's sole assignment of error is as follows:
 {¶ 28} "THE TRIAL COURT ERRED IN DENYING HOLLAND'S MOTION TO SUPPRESS AS HOLLAND'S STATEMENTS WERE NOT FREELY AND VOLUNTARILY GIVEN AND THUS OBTAINED IN VIOLATION OF HOLLAND'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS."
 {¶ 29} Holland does not appear to be challenging the sufficiency of the warnings he received that are required by Miranda v. Arizona (1966),384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. He is asserting that his statements, while obtained in compliance with Miranda, were not voluntary.
 {¶ 30} In general, as Holland notes, the State has the burden of establishing the voluntariness of a confession. Colorado v.Connelly (1986), 479 U.S. 157. In this connection, the only testimony at the suppression hearing was given by the two police officers present during the questioning and statement, officers Bilinski and Hayes. Holland offered no evidence in rebuttal. It is clear from the trial court's ruling, given orally from the bench at the conclusion of the suppression hearing, that it credited the testimony of the officers.
 {¶ 31} The testimony of the officers established that Holland was advised of his rights under Miranda v. Arizona, and waived those rights. That testimony further established that the officers used no coercive tactics to overbear Holland's will. In fact, they both specifically denied that any promises were made to Holland that his answering their questions would result in any favorable treatment, and Bilinski made it clear to Holland that he was going to "do time," if convicted of the charges.
 {¶ 32} Holland is reduced to arguing that the State failed to establish that he had normal mental capacity; that is, that the State failed to disprove the possibility that Holland had diminished mental capacity. It should be noted that the testimony of both officers Bilinski and Hayes included statements that Holland did not appear to have any mental deficits or impairments.
 {¶ 33} We agree with Holland that diminished mental capacity may be a factor in determining whether a confession has been involuntarily induced. State v. Edwards (1976), 49 Ohio St.2d 31, second paragraph of syllabus; see, also, State v. Patterson, 2006-Ohio-1422, Montgomery App. No. 20977, ¶ 21. Typically, the analysis is whether, while considering a suspect's mental capacity along with the totality of the circumstances, "the conduct of the interrogating officers * * * amount[s] to overreaching." State v. Finley (June 19, 1998), Clark App. No. 96-CA-30, p. 24.
 {¶ 34} In the case before us, there is no evidence that the police officers who questioned Holland, Bilinski and Hayes, had any reason to suspect that Holland's mental capacity was diminished in any way. There is also nothing in the record to indicate that the officers overreached in any way, thereby implicating the voluntariness of the confession.
 {¶ 35} Holland's position seems to be that the police officers bore the burden of establishing that Holland did not have a diminished mental capacity, so that when they failed to inquire along those lines, despite having had no reason to suspect Holland's mental capacity, they failed in their burden. We reject this notion.
 {¶ 36} In several areas of the law, the normal mental capacity of an adult is presumed in the absence of any evidence to the contrary. An adult is presumed to have the mental capacity to make a will.Kennedy v. Walcutt (1928), 118 Ohio St. 442, 161 N.E. 336, paragraph four of the syllabus. A defendant is presumed competent to stand trial. R.C. 2945.37(G). An adult is presumed competent to be a witness. Evid. R. 601.
 {¶ 37} Common sense militates in favor of a presumption, rebuttable upon the presentation of any evidence to the contrary, that an adult has normal mental capacity. This follows from the tautological fact that most adults enjoy, by definition, normal mental capacity. In dealing with a stranger, one naturally presumes, in the absence of evidence to the contrary, that one is dealing with a person of ordinary mental capacity.
 {¶ 38} In our view, it would not be reasonable to impose upon a police officer, who has already complied with Miranda v. Arizona, supra, the burden of establishing that the suspect the officer is questioning has ordinary mental capacity, in the absence of any reason to doubt the suspect's capacity. Doubts could be engendered by the suspect's conduct observed by the officer, or even by report — e.g., "Officer, that fellow who just robbed me, it seemed like he was high on something; he wasn't making any sense," to an officer who has apprehended a suspect shortly after a robbery.
 {¶ 39} In the case before us, the officers had no reason to suppose that Holland had any mental deficits or impairments. Nor was any evidence admitted at the suppression hearing that would cast doubt on Holland's mental capacity. We conclude, therefore, that the presumption that Holland had ordinary mental capacity was not overcome, and that the record amply supports the trial court's conclusion that Holland's confession was voluntary.
 {¶ 40} Holland's sole assignment of error is overruled.
 III {¶ 41} Holland's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
WOLFF, P.J., and GRADY, J., concur.