Day, J.
 

 Several grounds of alleged error are urged as reasons- for reversal of this judgment:
 

 ■ First. Upon the question whether the plaintiff, Susie Kathryn Walcutt, had the right to bring this action to contest the will of Claudius M. Kennedy, deceased, we are of opinion that it is well established that persons who are beneficiaries in a will have such a direct pecuniary interest as entitles them to contest another alleged will of the same testator which would destroy or reduce their share in his estate if such other alleged will should ultimately control.
 

 
 *445
 
 It is provided by Section 12079, General Code, that:
 

 “A person interested in a -will or codicil admitted to probate in the probate court, or court of common pleas on appeal, may contest its validity by a civil action in the common pleas court of the county in which such probate was had. ’ ’
 

 In
 
 Bloor
 
 v.
 
 Platt,
 
 78 Ohio St., 46, 84 N. E., 604, 14 Ann. Cas., 332, it was held:
 

 “A judgment creditor of an heir, who has obtained a lien by levy on property, which in the absence of a will would be the property of the debtor heir by descent, is a person interested in a will or codicil, within the meaning of Section 5858, Revised Statutes [now Section 12079, General Code], and therefore has legal capacity to prosecute an action to contest the validity of an alleged will disposing of such property to a person other than such heir.”
 

 In
 
 Chilcote
 
 v.
 
 Hoffman,
 
 97 Ohio St., 98, 119 N. E., 364, L. R. A., 1918D, 575, it was held that:
 

 “A
 
 person interested, within 'the meaning of Section 12079, General Code, is one who, at the time of the commencement of an action to contest a will, has a direct, pecuniary interest in the estate of the putative testator, that would be impaired or defeated if the instrument admitted to probate is a valid will.”
 

 See, also,
 
 In re Estate of Langley,
 
 140 Cal., 126, 73 P., 824;
 
 Buckingham’s Appeal,
 
 57 Conn., 544, 18 A., 256;
 
 Churchill
 
 v.
 
 Neal,
 
 142 Ga., 352, 82 S. E., 1065;
 
 McDonald
 
 v.
 
 McDonald,
 
 142 Ind., 55, 41 N. E., 336;
 
 Turhune
 
 v.
 
 Brookfield,
 
 5 Redf. Sur. (N. Y.), 220;
 
 Merrill
 
 v.
 
 Rolston,
 
 5 Redf. Sur. (N. Y.), 220; Ann Cas., 1917C, 906, note; 130 Am. St. Rep., 195, note.
 

 
 *446
 
 The point is raised as to the necessity of the beneficiary proving the will under which he claims, or the extent to which he must go in proving its validity before he can contest another will. The authorities hold in general that probate of the will under which contestant claims’ is not necessary, but that the contestant must make out at least a
 
 prima facie
 
 case as to the validity of the will under which he claims.
 
 Dower
 
 v. Church, 21 W. Va., 23;
 
 Richardson
 
 v.
 
 Moore,
 
 30 Wash., 406, 71 P., 18;
 
 Ruth
 
 v.
 
 Krone,
 
 10 Cal. App., 770, 103 P., 960;
 
 Morey
 
 v.
 
 Sohier,
 
 63 N. H., 507, 3 A., 636, 56 Am. Rep., 538;
 
 Smith
 
 v.
 
 Chaney,
 
 93 Me., 214, 44 A., 897;
 
 Kostelecky
 
 v.
 
 Scherhart,
 
 99 Iowa, 120, 68 N. W., 591;
 
 In re Estate of Langley, supra; Buckingham’s Appeal, supra.
 

 The question of the right of defendant in error, Susie Kathryn Walcutt, to maintain the action was not necessarily a jury issue, but was a mixed question of law and fact, and triable to the court in this instance, and the will under which she claimed was therefore properly introduced in evidence. The record shows that the trial court so regarded, the matter, it appearing:
 

 £ £ The Court: The original will may be offered but only for the purpose' of showing the plaintiff’s interest in this contest. She is not an heir, but she has an interest in this will, because there is another will that gives her some of the testator’s property, and this one does not.”
 

 Further, in the general charge the court said:
 

 “It will be seen from this that the will under which plaintiff claims is not now in contest. That will be a matter of further consideration should this will of May 26, 1921, be set aside. I mean by
 
 *447
 
 this that you have nothing to do as to the validity of the will under which the plaintiff here is claiming'. ’ ’
 

 This discloses that there was a determination by the trial court of this issue as to the right’ of Susie Kathryn Walcutt to maintain this action. We see no error in the matter being so determined.
 

 Second, was the record of the adjudication of insanity and the appointment of the guardian properly introduced in evidence?
 

 Objection is made that there was a failure to give notice to the next of kin of Claudius M. Kennedy, and upon the person for whom a guardian was appointed, at least three days before the adjudication, as required by Sections 10989 and 10989-1, General Code.
 

 The probate court, on July 16, 1920, adjudged Claudius M. Kennedy to.be insane and committed him to the Lima State Hospital. , Said Claudius M. Kennedy then became a ward of the court and within its jurisdiction. As to Raymond R. Kennedy, the son and next of kin, it was upon his affidavit that the insanity proceedings were instituted, and three weeks thereafter, to wit, on August 6, 1920, guardianship proceedings were instituted, in which the wife “of said Raymond R. Kennedy, having made application therefor, was appointed guardian, and the record discloses that Raymond R. Kennedy admits he acted as the attorney for the guardian in such application. It would therefore seem that there was actual notice to the next of kin of the application for the guardianship of Claudius M. Kennedy, and said Claudius M. Kennedy being a ward of the court, as an insane person, the court, by vir
 
 *448
 
 tue of the Section 10989-1, General Code, had power to make the appointment upon its own motion as well as upon the application of the daughter-in-law. Section 10989, General Code.
 

 "With the next of kin acting as the attorney for the applicant for the guardianship, we cannot see how said next of kin can take advantage of the action of the court granting the application without waiting for three days. The objection is highly technical, and, if the same amounted to any invalidity in the proceedings, it was waived by not pressing the same at the time of the application and appointment.
 

 Further, however, it may well be argued that the objection now urged amounts to a collateral attack upon the proceedings and judgment of the probate court, if the same should not be regarded as a direct attack. In
 
 Shroyer
 
 v.
 
 Richmond,
 
 16 Ohio St., 455, it is held in paragraph 7 of the syllabus:
 

 “Hence an order appointing a guardian, made by a probate court, in the exercise of jurisdiction, cannot be collaterally impeached. The record showing nothing to the contrary, it will be
 
 conclusively presumed,
 
 in all collateral proceedings, that such order was made upon full proof of all the facts necessafy to authorize it.”
 

 See, also,
 
 Heckman
 
 v.
 
 Adams,
 
 50 Ohio St., 305, 34 N. E., 155;
 
 Wheeler
 
 v.
 
 State,
 
 34 Ohio St., 394, 32 Am. Rep., 372;
 
 Railroad Co.
 
 v.
 
 Village of Belle Centre,
 
 48 Ohio St., 273, 27 N. E., 464.
 

 We are therefore of opinion that, whether the objection to the appointment of the guardian be regarded as a direct or collateral attack, there was
 
 *449
 
 no error committed in so far as the validity of such judgments are concerned.
 

 Upon the question of testamentary capacity of the testator in a will contest, evidence of adjudication of insanity of the testator and the appointment of a guardian for him is generally held admissible. The authorities are not uniform, however. Some of the cases admitting such testimony are
 
 Holliday
 
 v.
 
 Shepherd,
 
 269 Ill., 429, 109 N. E., 976, 7 A. L. R., 558;
 
 McAllister
 
 v.
 
 Rowland,
 
 124 Minn., 27, 144 N. W., 412, Ann. Cas., 1915B, 1006;
 
 In re Estate of Baker,
 
 176 Cal., 430, 168 P., 881;
 
 Kelley
 
 v.
 
 Stanton,
 
 141 Md., 380, 118 A., 863;
 
 In re Estate of Austin,
 
 194 Iowa, 1217, 191 N. W., 73;
 
 In re Estate of Loveland,
 
 162 Cal., 595, 123 P., 801;
 
 In re Estate of Hendershott,
 
 134 Iowa, 320, 111 N. W., 969, 120 Am. St. Rep., 438;
 
 In re Will of Van Houten,
 
 147 Iowa, 725, 124 N. W., 886, 140 Am. St. Rep., 340;
 
 Mileham
 
 v.
 
 Montagne,
 
 148 Iowa, 476, 125 N. W., 664; 1 Page on Wills (2d Ed.), Section 710, p. 1205.
 

 As opposed to the admissibility of such testimony may be cited
 
 Wetzel
 
 v.
 
 Firebaugh,
 
 251 Ill., 190, 95 N. E., 1085;
 
 Entwistle
 
 v.
 
 Meikle,
 
 180 Ill., 9, 54 N. E., 217;
 
 Carter
 
 v.
 
 Gahagan,
 
 102 Neb., 404, 167 N. W., 412;
 
 Watson’s Ex’r.
 
 v.
 
 Watson,
 
 137 Ky., 25, 121 S. W., 626;
 
 In re Will of Pinney,
 
 27 Minn., 280, 6 N. W., 791, 7 N. W., 144 (overruled by
 
 Mc-Allister
 
 v.
 
 Rowland, supra).
 

 In view of the fact that the question of testamentary capacity depends upon the facts of each individual case, the above-cited cases must be considered in the light of their own particular circumstances. Sufficient is it to say that we have reached
 
 *450
 
 the conclusion that in a will contest case evidence of the appointment of a guardian or an adjudication of insanity is admissible to go to the jury, under proper instructions, as bearing upon the testamentary capacity of the, testator at the time of executing the will. While the statutes of this state provide that, in order to make a
 
 valid
 
 will, a testator must be of sound mind, and not under any restraint, yet it is quite true that the testator might be,under guardianship, and also might be adjudged to be an insane person, and yet have testamentary capacity. In fact, the trial court so charged before argument, upon request of plaintiff in error, and correctly so, as follows:
 

 “The fact that the testator had been adjudged insane and was under guardianship at the time of the execution of this paper writing does not of itself prevent' him from making a valid will, provided he had the measure of capacity required for that act as defined by the court, namely, capacity to understand the nature of the business in which he was engaged and to comprehend generally the nature and extent of his property, to hold in his mind the names and identity of those who have natural claim upon his bounty, and was able to appreciate his relation to the members of his family.”
 

 It is also urged that the court erred in permitting the full record of the adjudication of insanity, including the testimony of the examining physicians, to go to the jury. The present record discloses that the physicians who testified in the insanity proceeding were witnesses in the will contest, and were cross-examined at great length touching their opinion relative to the testator’s mental condition.
 
 *451
 
 We see no prejudicial error, therefore, in permitting the full record to be introduced in evidence.
 

 Third. Did the trial court err in instructing the jury as follows in the general charge:
 

 “Sound mind and memory in this connection is a relative term in a great degree. It must be judged in view of what the mind is about to undertake and all the facts and circumstances connected therewith. It does not mean that the testator shall have that same perfect and complete understanding and comprehension of all things and in all their bearings as though of sound and vigorous health of mind and body, or that he should have that degree of mind required to make a contract or transact business. That is not the test.
 

 “As said, every person is presumed to be of sound mind, but, if he has been declared insane by a court of competent jurisdiction and is under a guardian as here, the presumption of sanity is not only removed, but a presumption- arises to the contrary, and, in determining the question of the testator’s capacity to make a will, you will proceed upon the theory that his insanity continued up to and including the time the will was made unless the presumption has been overcome by other evidence in,the case. The fact that the testator was declared insane did not of itself - disqualify the testator to make a will, provided, at the time, he had the measure of capacity to make a will, as I will now explain to you.
 

 “In connection with the other evidence, you have the right, in determining the testamentary capacity of the testator, to consider any evidence tending to show that the will was just or unjust, reasonable
 
 *452
 
 or unreasonable, natural or unnatural; the value and nature of the testator’s estate and the financial condition of those who might naturally expect to be beneficiaries, at the time the will was made. Such matters, you will understand, do not of themselves establish either testamentary capacity or testamentary incapacity, but, as I have said, only have weight according to circumstances and in connection with the other evidence relative to the controversy.
 

 “To make a will it is sufficient for the testator to have mind enough to know and understand what property he has, who would naturally inherit it in the absence of a will, and whom he selects to give it to by the will. He should be able to comprehend the extent of the property of which he is disposing, and any other property, if any, which he owns; the persons to whom he gives, and those, if any, from whom he withholds, and he should be able to understand his relation with reference to the natural objects of his bounty. I therefore say to you that, if the said Claudius M. Kennedy had mind enough to understand and appreciate all of these things when he made this will, then the law regards him as having testamentary capacity, and hence capable of making this will. ’ ’
 

 It is the contention of plaintiff in error that by this instruction the burden of showing that the testator had mental capacity sufficient to make the will in question was placed upon the plaintiff in error, defendant below. It is not the law in this state that an adjudication of insanity, or the appointment of a guardian, or both, makes a prima facie case of testamentary incapacity, and places the burden upon
 
 *453
 
 the proponents of the will to show the sanity of the testator in so far as testamentary capacity is concerned. Under the statutes and decisions of this state, the burden to show lack of testamentary capacity is upon the contestant of the will, and such burden never shifts. The entire instruction upon this subject contained in 'the charge does not show that the testator’s capacity to make a will was taken away from him by the adjudication of insanity, but simply states that the presumption of the continuation of insanity after an adjudication by a court of competent jurisdiction remains until it “has been overcome by other evidence in the case.”
 

 Now the law presumes every man to be sane until that presumption is overcome by sufficient evidence, and, having been so overcome, and an adjudication to that effect having been entered in a court of competent jurisdiction, the presumption of insanity established thereby continues until it in turn has been removed by evidence which meets, rebuts, countervails, or overcomes such presumption. The continuation of the guardianship from August 6, 1920, to the date of the testator’s death is conceded in the record, and it cannot be gainsaid that the adjudication of insanity from July 16,1920, continued for a like period. The presumption of insanity continuing after the adjudication, which could not be removed except by sufficient evidence, was one thing, and the ability of the testator to execute a valid last will and testament was quite another thing; and other portions of the charge above quoted clearly recognize the fact that the insanity did not itself disqualify the testator from making a will, provided, at the time of making the
 
 *454
 
 will, he had the measure of capacity required hy law, which was correctly given by the trial court.
 

 It must be borne in mind that the burden of proof to show that the paper writing submitted was not the last will and testament of Claudius M. Kennedy, deceased, was placed upon the plaintiff below, defendant in error here, the charge in that behalf reciting :
 

 “I have already explained to you the burden of proof is upon the plaintiff to show that this is not the last will of the said Claudius M. Kennedy, deceased, and that the
 
 prima facie
 
 case arising from the probate of the will and the other evidence given in its favor must be overcome by a preponderance of the evidence.”
 

 This is in accord with the rule laid down in
 
 Hall
 
 v.
 
 Hall,
 
 78 Ohio St., 415, 85 N. E., 1125, and
 
 West
 
 v.
 
 Lucas,
 
 106 Ohio St., 255, 139 N. E., 859.
 

 The fact that the testator had been adjudged insane, ancl the presumption of its continuance, was a circumstance in the case that the jury had a right to consider as bearing upon the true issue submitted, to wit, whether or not the testator had mental capacity sufficient to execute a valid last will and testament within the meaning of the law, upon the date of the said instrument, to wit, May 26,1920.
 

 Upon the question of the removal of the presumption of the continuance of insanity after the same has been adjudicated by a court of competent jurisdiction, we see no error in the court’s charge in that behalf. Thé instruction on such question is not to be confused with one relating to the degree of mental capacity sufficient to execute a valid last will and testament. Ño burden was placed upon
 
 *455
 
 the proponent of the will; the burden of proying the incapacity of the testator was-placed upon the-contestant. The degree of proof necessary to remove a presumption is not to be confused with the degree necessary to sustain the burden of proof. The burden of proof imposed by law upon one who must proye the existence of a fact or a thing necessary to be proven in the prosecution or the defense of a lawsuit means the obligation to show it by proof. When a party is not required to sustain the burden of proof upon some particular issue, a rebuttable presumption arising out of such issue may be overcome by evidence which counterbalances the evidence to sustain the presumption; however, when such party is required to assume the burden of proof upon an issue, any rebuttable presumption arising therefrom must be removed by the isame degree of proof necessary to sustain the issue.
 

 Fourth. Did the court err in submitting the case to a jury? Without quoting in detail from the record, it is sufficient to say that the same discloses a man who had been under treatment for mental disability on six different occasions; an inmate of a sanitarium; who had delusions; was of a depressive, suicidal type; suffered from arteriosclerosis, and had a pronounced case of senile dementia; who killed his wife, with no provocation; was an inmate of the Lima State Hospital for the criminal insane from July, 1920, to August, 1924, with occasional visits home in the custody and control of relatives; who was under guardianship from August 6, 1920, until his death. Did such a man, on May 26, 1921, have sufficient testamentary capacity, within the
 
 *456
 
 meaning of the law, to execute a valid last will and testament?
 

 It is conceded, -as we understand the position of plaintiff in error, that the testimony on behalf of the defendant in error showed that the testator was medically insane from the time of his commitment to the Lima State Hospital, with periods of improvement, until the date of his death; and the record shows a stipulation that the guardianship was never removed. It is, of course, true that a man may be medically insane and yet capable of making a valid will. On the other hand, it is also true that such a man might lack testamentary capacity, and be also medically insane. Under the testimony in the record, át the conclusion of the case of the defendant in error, contestant of the will, and also at the close of all the testimony in the case, we are of opinion that the question whether the testator lacked testamentary capacity was for the jury,- and there was sufficient evidence adduced on the part of the contestant to warrant the submission of the case to the jury and to have the matter determined under the instruction approved in the case of
 
 Hall
 
 v.
 
 Hall, supra.
 
 The plaintiff in error introduced over twenty witnesses upon the question of mental capacity, and the issue thus made was clearly for the jury.
 

 Fifth. It is also claimed by the plaintiff in error that there should have been a reversal by the Court of Appeals upon the weight of the evidence, because of the fact that in the opinion by that court rendered in this case it is said that the reason for not entering such judgment was because the case had been tried once before, and a reversal had upon
 
 *457
 
 the weight of the evidence, wherefore the Court of Appeals had lost , its power to enter a second reversal upon the same ground. To show that the present case was a new case, it is urged that Raymond R. Kennedy, the executor, was not a party to the first ease, although upon the second trial such executor was made party defendant; but an examination of the petition discloses that he was fully described therein as executor, and that he individually was a party named in the caption of the petition, and was present in court and made a defense in his personal capacity.
 

 We can only consider the facts presented in the present record, and the Court of Appeals speaks by its journal alone. In the journal entry in the present case no reference is made to the point contended for by plaintiff in error, the affirmance being a general one, the language of the journal entry reciting that the “court finds there is no error apparent upon the record in said proceedings and judgment, *
 
 * *
 
 and the same is hereby affirmed.” In view of this, we find neither occasion nor ground upon which we can disturb the present judgment by reason of this claim of the plaintiff in error.
 

 Sixth. A further ground of alleged error is the introduction of the testimony relative to the domestic affairs of the plaintiff in error and defendant in error; also cross-examination of the plaintiff in error as to his present marital status.
 

 The testimony in a will contest necessarily takes a wide range; but the same should, of course, relate to facts and circumstances which have a bearing upon the ultimate question in the ease, to wit, the ability of the testator to execute a valid last
 
 *458
 
 will and testament upon the date of the alleged will. As bearing upon the reasonableness of the will in question, such knowledge as the testator had of the domestic affairs of his son and the defendant in error during their marital life,. and thereafter, might have some competency; but, after the death of the testator, what the relations of the second wife and the plaintiff in error might have been is a matter which we doubt would have any bearing upon the issues in the case. The cross-examination of the plaintiff in error on this point, his answers and explanations, were of such character, however, as to render such cross-examination harmless, and not a sufficient ground for reversal of the judgment. Cross-examination of a party or witness should be confined to, and be germane to, the issues of the case, and the extent of such cross-examination rests, in great measure, in the discretion of the trial court. "We do not believe that the testimony complained of affected the issues as to the testator’s mental condition and capacity to execute a will; and the plaintiff in error does not appear, in the light of his explanations, to have been prejudiced thereby.
 

 Seventh.' Much is said in brief of counsel as to the applicability of Section 2002, General Code, relative to inmates of the Lima State Hospital executing contracts, deeds, or other instruments, unless approved and allowed by the court committing them. We dp not regard this section as involved in the present record, and therefore do not pass upon its constitutionality.
 

 Eighth. It is claimed that the direction given by the trial court at the conclusion of the general charge
 
 *459
 
 that the jury might consider “wherever Mr. Kennedy has been since immediately before and after the will was drawn” is prejudicial to the plaintiff in error. The entire range of evidence was before the jury, including the testator’s whereabouts from the date of his commitment to the Lima State Hospital to the date of his death, and was a proper subject for consideration.
 

 Upon the entire record, we have reached the conclusion that the judgment of the Court of Appeals in affirming the judgment of the court of common pleas was not erroneous, and the same is hereby affirmed.
 

 Judgment' affirmed.
 

 Allen, Kinkadb, Robinson, J ones and Matthias, ' JJ., concur.
 

 Marshall, C. J., concurs in the judgment.