DECISION AND JUDGMENT ENTRY
{¶ 1} Kenneth and Barbara Meek brought an action challenging the validity of the will of Earl A. Gordon, alleging he lacked testamentary capacity to execute it because the Probate Court of Washington County had previously declared Gordon to be incompetent and had appointed a guardian to represent him. Gordon's executrix and certain beneficiaries under the will moved for a summary judgment and supported the motion with affidavits showing that Gordon was competent to execute a will. However, when the Meeks failed to file any response, the trial court entered a summary judgment dismissing the complaint. On appeal, the Meeks claim the trial court improperly required them to prove incompetency in light of the presumption of insanity that arises under a prior declaration of incompentency and appointment of a guardian. However, *Page 2 
because the Meeks failed to produce any evidence rebutting the affidavits that contended Gordon was competent, a summary judgment was appropriate.
 I. Facts and Procedural History {¶ 2} Prior to his death on January 15, 2005, Earl A. Gordon owned a 139.5-acre farm in Washington County. Gordon neither married nor had children. Instead, he relied on the help of the Meeks in managing the farm, for running errands, and for personal care. However, the Meeks never sought compensation from Gordon for their services. Instead, Gordon said he would leave the Meeks the farm in his will. In 1993, Gordon executed a will leaving the farm to the Meeks, and he gave them a copy of it. Near that time, he also executed a Power of Attorney in favor of Mrs. Meek. However, Gordon gave her the power of attorney only as a convenience, and he continued personally managing his finances.
 {¶ 3} During a hospital stay in June 2001, Gordon revoked the power of attorney. Following his release from the hospital, the County placed Gordon in a nursing home facility in Marietta. However, because of his aggressive behavior toward women, Gordon was moved from the Marietta facility to an all-male nursing home in Millersberg. In order to facilitate the transfer, Mrs. Meek was appointed Gordon's temporary guardian. She then petitioned to have Gordon declared incompetent and to be appointed his permanent guardian. At the hearing, Gordon stated that he did not want Mrs. Meek to be his guardian, and, at his request, the Probate Court of Washington County appointed Dianna Cowman to be Gordon's guardian on June 28, 2002. From the time of his hospitalization until the hearing, the Meeks continued to *Page 3 
regularly visit Gordon and to bring him his mail, and Gordon continued to independently manage his personal affairs.
 {¶ 4} After the court appointed Cowman to be his guardian, Gordon requested that his attorney draft a new will for him. On August 16, 2002, Dennis L. Sipe and his assistant, Bonnie B. Parks, visited Gordon at the Millersburg nursing facility in order to prepare this will. Where the 1993 will had left the farm and the residuary of his estate to the Meeks, the 2002 will left the farm to Gordon's cousin, Dale Greenlees, and specific bequests as well as the residuary of his estate to Dianna Cowman, Dale Greenlees, Gordon Greenlees, Karen Martin, Mildred Martin, and Susan Lott. On April 15, 2003, Gordon executed a new will, which was substantially similar to the 2002 will, except that it deleted a specific bequest to the Meek's son, Donald Meek. Thus, in the 2002 and 2003 wills, Gordon removed all bequests in favor of the Meeks.
 {¶ 5} The Meeks only learned that Gordon had changed his will after his death. They made a claim on Gordon's estate for services that they had provided to him as well as for bills that they had paid on Gordon's behalf with the expectation of receiving the farm as a bequest. The Meeks also filed a complaint challenging the will, which had been admitted to probate in Washington County. They claimed that Gordon was not competent when he executed his 2002 and 2003 wills, and they also alleged that these two wills had been executed under undue influence. Following discovery, Cowman, individually and as executor of the estate, and various beneficiaries under the 2003 will (collectively, "Cowman") moved for a summary judgment. Cowman supported her motion with affidavits from Sipe and Parks, who averred that Gordon was mentally competent to sign the 2002 and 2003 wills. Cowman also filed the affidavit of Pamela *Page 4 
E. Cohen, who had been appointed by the probate court to report on Gordon's need for a guardian. Cohen averred that she believed that, at the time of the guardianship hearing, Gordon had been mentally competent. The Meeks filed no response to the motion, and the probate court ruled in favor of Cowman and dismissed the complaint. The Meeks filed this appeal.
 II. Assignments of Error
The Meeks present three assignments of error:
 "I. The trial court erred in its placement of the burden in the presumption of insanity."
 "II. The trial court erred in finding as a matter of law the presumption of insanity was overcome by Defendants-Appellees."
 "III. The trial court erred in finding that there were no genuine issues of material fact as to Decedent's testamentary capacity."
Because each of these assignments of error addresses the question of whether the trial court properly entered a summary judgment in Cowman's favor, we address them together.
 III. Standard of Review {¶ 6} In reviewing a summary judgment, the lower court and the appellate court utilize the same standard; we review the judgment independently and without deference to the trial court's determination.Doe v. Shaffer (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243, 1245. Summary judgment is appropriate only when: (1) there is no genuine issue of material fact; (2) reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to judgment as a *Page 5 
matter of law. Id. See also Bostic v. Connor (1988), 37 Ohio St.3d 144,146, 524 N.E.2d 881 and Civ.R. 56(C).
 {¶ 7} The burden of showing that no genuine issue exists as to any material fact falls upon the party moving for a summary judgment.Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. The movant bears this burden even for issues for which the nonmoving party may bear the burden of proof at trial. Vahila v. Hall (1997),77 Ohio St.3d 421, 429, 674 N.E.2d 1164; Newman v. Enriquez,171 Ohio App.3d 117, 124, 869 N.E.2d 735, 740, 2007-Ohio-1934, at ¶ 16. If the moving party satisfies this burden, the nonmoving party then has the reciprocal burden outlined in Civ. R. 56(E) to set forth specific facts showing that there is a genuine issue for trial. If the nonmovant does not satisfy this evidentiary burden and the movant is entitled to judgment as a matter of law, the court should enter a summary judgment accordingly. Kulch v. Structural Fibers, Inc., 78 Ohio St.3d 134, 145,1997-Ohio-219, 677 N.E.2d 308, citing Dresher v. Burt (1996),75 Ohio St.3d 280, 295, 662 N.E.2d 264.
 IV. Gordon's Testamentary Capacity {¶ 8} In Ohio, there is a presumption that a person who "has been declared insane by a court of competent jurisdiction, and is under guardianship" is incompetent to make a will. Kennedy v. Walcutt (1928),118 Ohio St. 442, 161 N.E. 336, syllabus. The Meeks argue that the probate court improperly required them to prove that Gordon was incompetent to make a will after the court had declared him incompetent and had appointed a guardian on his behalf. Instead, they argue that it was Cowman's burden to overcome the presumption of incompetence. The Meeks note that, in its entry of judgment, the probate court referred to the their failure to put forward any evidence *Page 6 
regarding Gordon's incompetence. Although the probate court specifically acknowledged that there was a presumption of incapacity, the Meeks argue that the trial court failed to apply this presumption in their favor. The Meeks also argue that the probate court improperly applied a conclusive presumption of the validity of a will that has been admitted to probate. As the Meeks correctly point out, that holding has been overruled by the Supreme Court of Ohio in Krishbaum v. Dillon (1991),58 Ohio St.3d 58, 64, 567 N.E.2d 1291, 1297 n. 9, which replaced the conclusive presumption with a rebuttable one. See Riley v. Tizzano, Washington App. No. 06CA3, 2006-Ohio-6625, at ¶ 12 ("Under R.C. 2107.74, an order admitting a will to probate is prima facie evidence of its validity."). Our reading of the probate court's order does not indicate that it treated the presumption as conclusive. And from our independent review of the record, we hold that summary judgment was appropriate in this case.
 {¶ 9} The crux of the Meeks' argument is that the probate court "improperly required the Plaintiffs-Appellants [to] prove that the Decedent was incompetent." "Testamentary capacity exists when the testator has sufficient mind and memory to: (1) understand the nature of the business in which he is engaged, (2) comprehend generally the nature and extent of his property, (3) hold in his mind the names and identity of those who have natural claims upon his bounty, and (4) appreciate his relation to the members of his family." Riley, 2006-Ohio-6625, at ¶ 12, citing Niemes v. Niemes (1917), 97 Ohio St. 145, paragraph four of the syllabus. Generally, testamentary capacity is determined as of the date the will was executed. Id. at ¶ 15, citing Kennedy, supra. "However, evidence of the testator's mental and physical *Page 7 
condition, both at the time the will was executed and within a reasonable time before and after its execution, is admissible as casting light on his testamentary capacity." Id.
 {¶ 10} Although the Meeks bore the ultimate burden of proving that Gordon was incompetent to make a will, Riley, 2006-Ohio-6625, at ¶ 12, Cowman, as the movant for a summary judgment, bore the initial burden of demonstrating the absence of genuine fact and that a summary judgment is appropriate. Because it is undisputed that Gordon had been declared incompetent by court order, Cowman had the burden of coming forward with evidence sufficient to rebut the presumption of incompetence that arises "when a person has been declared insane by a court of competent jurisdiction, and is under guardianship." Kennedy, supra, syllabus. "[W]here a rebuttable presumption exists, a party challenging the presumed fact must produce evidence of a nature that counterbalances the presumption or leaves the case in equipoise. Only upon the production of sufficient rebutting evidence does the presumption disappear."Myocare Nursing Home, Inc. v. Fifth Third Bank, 98 Ohio St.3d 545,2003-Ohio-2287, 787 N.E.2d 1217, at ¶ 35. As we have recently explained,
 a rebuttable presumption does not carry forward as evidence once the opposing party has rebutted the presumed fact. Forbes v. Midwest Air Charter (1999), 86 Ohio St.3d 83, 711 N.E.2d 997. Thus, once the presumption is met with sufficient countervailing evidence, it fails and serves no further evidentiary purpose. We have previously characterized the effect of rebutting the presumption as `bursting the bubble,' with the case then proceeding as if the presumption had never arisen. See Ellis v. Evans (Aug. 16, 2001), Gallia App. No. 00CA17, unreported, 2001 WL 978868 * * *.
Horsley v. Essman, 145 Ohio App.3d 438, 444, 763 N.E.2d 245.
 {¶ 11} In her motion for a summary judgment, Cowman relied on the depositions and affidavits of Dennis Sipe, Bonnie Parks, Dianna Cowman, Donald Greenlees, Dale *Page 8 
Greenlees, Pamela Copen, and Kenneth and Barbara Meek. Sipe, the attorney who represented Gordon in the guardianship hearing and who had prepared and witnessed the execution of the 2002 and 2003 wills, averred that Gordon "was mentally alert and competent and understood what was going on" at the time of the competency hearing. Sipe further averred that, when Gordon signed the 2002 will, he was "of sound mind and memory, competent and under no restraint or undue influence." Likewise, at the execution of the 2003 will, Sipe opined that Gordon was "aware of [the will's] contents, he was of sound mind and memory, in a good mood and not under duress or undue influence."
 {¶ 12} Similarly, Parks, who accompanied Sipe to visit Gordon, stated in her affidavit that "[Gordon] was aware of [the 2003 will's] contents, he was of sound mind and memory and under no restraint or undue influence, and the execution of the Will was his own free act and deed." Parks also annexed to her affidavit a memorandum prepared the day after Gordon signed the 2003 will. In this memorandum, Parks noted that Gordon was aware that some of his property had been auctioned off by Cowman and that he believed that, if he had attended the auction, he could have brought in more money. Gordon stated that some of his farm equipment did not appear on the list of goods sold and that it was missing from the farm. He also expressed his concern that "since the house is vacant there isn't insurance on the premises." Parks noted that Gordon was aware of current events such as the war in Iraq and the passing of people in the community. Finally, Parks stated that Sipe explained the changes to the will and that Gordon had read it.
 {¶ 13} Cowman put forward more evidence that Gordon was competent to make *Page 9 
a will. Cohen, who was appointed by the probate court to evaluate Gordon prior to the guardianship hearing, averred that "Gordon was mentally competent and certainly capable of transacting his business and banking activities." Cowman in her affidavit stated that, during each of her visits with him in 2002 and 2003, Gordon was "competent and of sound mind and memory and as stubborn and controlling as he had always been." Dale Greenlees averred that he had visited Gordon every four to six weeks from June 2002 until Gordon's death in 2005 and that, during each visit, Gordon was "alert and engaged in intelligent conversation." Donald Greenlees stated in his affidavit that, during one visit, Gordon had him "get a photo album out of the drawer * * * and we looked at the photographs and discussed what was shown." In his deposition, Donald Greenlees expanded on this event, explaining that Gordon's memory was good and that Gordon had done most of the talking regarding the photographs. Finally, Mr. Meek in his deposition testimony admitted that, in 2002, Gordon made various business decisions that he believed were "good ideas," including installing a culvert, draining ponds, and repairing the barn.
 {¶ 14} We hold that Cowman has put forward sufficient evidence to rebut the presumption that Gordon was incompetent to execute the 2003 will. We turn now to whether Cowman met her burden to demonstrate the absence of a genuine issue of material fact and the appropriateness of a summary judgment on the Meeks' claims.
 {¶ 15} In order to meet her initial burden of demonstrating the entitlement to a summary judgment, Cowman relied on the same depositions and affidavits referenced above. She thus produced evidence proving that Gordon was mentally competent at the time he executed his 2003 will. Cowman also "identified] those portions of the *Page 10 
record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Dresher v. Burt,75 Ohio St.3d 280, 296, 1996-Ohio-107, 662 N.E.2d 264. Specifically, Cowman pointed to the Meeks' own deposition testimony that they had no personal knowledge or witnesses who could testify regarding whether Gordon was competent to make the 2002 and 2003 wills. Civ. R. 56(E) provides that,
 "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party."
However, as noted above, the Meeks did not respond to the motion for a summary judgment.
 {¶ 16} Furthermore, much of the evidence relied on by the Meeks in their brief is not in the record and was not put before the trial court. An appellate court is "bound by the record before it and may not consider facts extraneous thereto." Paulin v. Midland Mut. Life Ins.Co. (1974), 37 Ohio St.2d 109, 112, 307 N.E.2d 908. Therefore, these facts are not properly before us either and we cannot use them in reviewing the judgment of the trial court. Lamar v. Marbury (1982),69 Ohio St.2d 274, 277, 431 N.E.2d 1028 ("Upon review the Court of Appeals was confined, pursuant to App. R. 12(A), to the record before it as defined in App. R. 9(A)."); Trimble Twp. Waste Water Treatment Dist. v.Cominsky (1993), Athens App. No. CA 1535, unreported ("[A] reviewing court should be limited to what transpired in the trial court as reflected by the record."). *Page 11 
 {¶ 17} The only facts referenced by the Meeks that do appear in the record are that Gordon had been judicially declared incompetent; that he retained that status when he executed his will; and that, when Sipe and Parks visited Gordon on June 14, 2002, Gordon was taking medication for dementia and believed that he was in a nursing home on Harmar Hill when, in fact, he was in a nursing facility in Hocking County. Reading the record in the light most favorable to the Meeks, as we must, at most the Meeks have shown that, a year before Gordon executed his last will, Gordon was confused about the nursing home in which he resided and was taking medication for dementia. There is no evidence regarding how the disease affected Gordon or that the dementia rendered him unable to understand what he was doing when he made his will in 2003. Thus, neither fact pointed to by the Meeks shows that Gordon was incompetent to make the 2003 will. See Robinson v. Harmon (1958), 107 Ohio App. 206,206, 157 N.E.2d 749, 750 ("Evidence that a person who executed a will was suffering from some of the infirmities of old age, such as failing eyesight, tremor of the hand in writing and a tendency to talk to himself and to change subjects frequently in conversation, does not of itself show a lack of testamentary capacity."); In re Estate ofGoehring, 7th Dist. Nos. 05 CO 27 05 CO 35, 2007-Ohio-1133, at ¶ 54
("[I]t is not enough to show that the testator had Alzheimer's disease, even if the Alzheimer's disease existed at the time the will was executed. The plaintiff must also show that Alzheimer's disease actually affected the testator's capacity to execute the will."); Martin v.Dew, 10th Dist. No. 03AP-734, 2004-Ohio-2520, at ¶ 20 ("Appellant offered no evidence that decedent was affected by dementia on the date she executed the will, and the uncontradicted statements by the individuals who witnessed her sign the will indicate she was alert, *Page 12 
oriented, and had testamentary capacity. Accordingly, the evidence presented was insufficient to create a genuine issue of material fact as to whether decedent lacked testamentary capacity on June 19, 2001.").
 {¶ 18} Although Mr. and Mrs. Meek testified that Gordon was incompetent at the time he executed his 2002 and 2003 wills, both admitted that they had not seen or communicated with Gordon since the guardianship hearing, almost a year prior to the execution of the 2003 will. Both admitted that they were not personally aware of Gordon's mental state at the time he executed the 2003 will. Furthermore, according to Donald Greenlees's deposition, Mr. Meek stated that he believed that Gordon was competent and did not need a guardian at the time of the guardianship hearing.
 {¶ 19} Based on our independent review of the record, we conclude that a summary judgment in Cowman's favor was appropriate. The fact that Gordon had been judicially declared incompetent and was under a guardianship raised only the presumption of incompetence, a presumption that we hold Cowman has rebutted. Once rebutted, this presumption serves no evidentiary purpose. Horsley, 145 Ohio App.3d at 444, 763 N.E.2d 245. There is no summary judgment evidence indicating that Gordon was incompetent to make the 2003 will. Thus, the Meeks failed to raise a genuine issue of material fact in response to Cowman's motion.
 V. Conclusion {¶ 20} The trial court properly entered a summary judgment in favor of Cowman and the other beneficiaries of Gordon's will. Accordingly, we affirm the judgment of the probate court.
 JUDGMENT AFFIRMED. *Page 13 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellees recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court, Probate Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 Abele, P.J. McFarland, J.: Concur in Judgment and Opinion. *Page 1