[Cite as *Hutchison v. Kaforey*, 2016-Ohio-3541.]

STATE OF OHIO       )              IN THE COURT OF APPEALS
                    )ss:         NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT   )

MARK A. HUTCHISON, et al.           C.A. No.     27761

     Appellant

     v.                         APPEAL FROM JUDGMENT
                            ENTERED IN THE
ELLEN C. KAFOREY, etc., et al.     COURT OF COMMON PLEAS
                            COUNTY OF SUMMIT, OHIO
     Appellees              CASE No.    2013 CV 00069

DECISION AND JOURNAL ENTRY

Dated: June 22, 2016

WHITMORE, Judge.

{¶1}　Appellant Mary Hutchison Barnes appeals from the trial court's grant of summary judgment in this will contest. We affirm in part and reverse in part.

I

{¶2}　At issue is the 2008 will of Michael Hutchison. Michael died in 2012, apparently from a heroin overdose. He was unmarried and did not have children. Michael's estate consisted of substantial sums received from the settlement of a lawsuit over sexual abuse by a priest that Michael suffered as a child.

{¶3}　Michael's 2008 will was substantially similar to wills he executed in 2007 and 2006, except that the 2008 will added beneficiaries. The 2008 will bestowed monetary gifts upon various family members, acquaintances, the "Altoona Childrens' Services Board" of Pennsylvania, and "St. Jude's Children's Cancer Hospital." Beneficiaries of the 2008 will

included Michael's father, his three brothers (James, Sam, and Mark Hutchison), his biological nephew (now adopted), and his now-late girlfriend.

{¶4} The 2008 will and Michael's prior wills did not name Barnes, who was Michael's mother, or Michael's sister. Michael told his attorney and guardian, Ellen Kaforey, that he did not wish to name Barnes in his will because she already had money.

{¶5} Kaforey drafted the 2008 will and Michael's prior wills. She is the executrix of Michael's estate. She served as Michael's legal guardian from 2005 to 2008.

{¶6} Kaforey testified that, although it was unusual for a guardian to draft a ward's will, it was neither unheard of nor prohibited by law or ethical considerations. She testified that guardians infrequently draft wills for their wards because persons under guardianship often resent their guardians for controlling their finances and other aspects of their daily living. Kaforey testified that Michael requested her to draft his will and that they generally enjoyed a good relationship because Michael understood her rules. She testified that she had drafted wills for other wards on a few occasions.

{¶7} Kaforey testified that she had served as guardian to hundreds of wards. In addition to a law license, she holds an active nursing license. She practiced as a public health nurse for a number of years before devoting herself to the full-time practice of law. While working as a nurse, Kaforey gained experience caring for patients with mental illnesses and substance abuse problems.

{¶8} Michael required a guardian because he was incapable of managing his own finances, healthcare, and living arrangements. Michael suffered from schizophrenia and post-traumatic stress disorder. He had a low I.Q. and no more than a seventh grade education. Michael was a frequent drug user. Cocaine and heroin were among the substances he abused.

Michael was hospitalized on multiple occasions and had run-ins with the criminal justice system. Although Barnes repeatedly referred to Michael in her deposition as "mentally retarded," there is no evidence in the record to support that contention.

{¶9} Barnes was Michael's guardian prior to Kaforey's appointment in 2005. Barnes moved out of state to pursue a relationship and relinquished her guardianship.

{¶10} Approximately four months after drafting the 2008 will for Michael, Kaforey resigned as Michael's guardian. In a letter to the probate court asking the court to remove her, she wrote that Michael "persists in making inappropriate decisions, like taking illegal drugs, not taking his medications properly, and keeping company with the wrong people." Kaforey wrote that the "final straw" was when Michael "slashed his throat with a razor" prior to entering a rehab program. Kaforey claimed that Michael was not able to enter rehab due to his "bizarre behaviors." Kaforey testified in deposition that these behaviors began after she drafted the 2008 will and were triggered in part by Michael's anxiety about attending a rehab program out of state. The probate court granted Kaforey's request to be removed as Michael's guardian and appointed a new guardian for him.

{¶11} After Michael died in 2012, his 2008 will was admitted to probate. Barnes and two of Michael's brothers, Mark and Sam, filed a will contest. They asserted that the will was invalid because Michael lacked testamentary capacity and had been unduly influenced. In their respective depositions, Barnes and Mark testified that they believed that Michael did not possess testamentary capacity to draft the 2008 will or either of the prior wills. They asserted that Kaforey had told them that the 2007 and 2008 wills were invalid because Michael was incompetent and could never draft a will. They claimed that Kaforey told them that she only drafted the wills to appease Michael because he was insistent and she was afraid of him.

According to Barnes and Mark, Kaforey told them that Michael would come to her law office and frighten her ailing mother who worked for her. Kaforey allegedly told Barnes and Mark that a court would not uphold any will that Michael executed and that Michael's entire estate would revert to the family. After the 2008 will was admitted to probate, Kaforey purportedly advised Barnes and Mark to file a will contest and referred them to an attorney.

{¶12} In her deposition, Kaforey denied saying that Michael lacked testamentary capacity when he executed the wills. She testified that she spoke at length with Michael about his bequests and was satisfied that he did have the capacity to make a will. She further testified that she could recognize when Michael was on drugs or noncompliant with his medications. Kaforey stated that when Michael was not on his medications, he suffered from auditory hallucinations and was unkempt and agitated. Kaforey testified that Michael was not impaired by drugs and was compliant with his medications when he signed the wills.

{¶13} Following motion practice, the trial court granted summary judgment against Barnes and her sons. The court found that the evidence did not give rise to a genuine issue of material fact as to whether Michael lacked testamentary capacity or was unduly influenced in the creation of his 2008 will.

{¶14} Only Barnes appealed from the trial court judgment. She raises two assignments of error for our review.

II

Assignment of Error One

THE PROBATE COURT ERRED AS A MATTER OF LAW IN DETERMINING THAT REASONABLE MINDS COULD COME TO BUT ONE CONCLUSION ADVERSE TO THE WILL CONTESTANTS. CONSTRUING THE EVIDENCE IN THE LIGHT MOST FAVORABLE TO THEM THE CONTESTANTS MADE A SUFFICIENT SHOWING THAT THE TESTATOR MAY HAVE LACKED CAPACITY TO EXECUTE THE

CONTESTED WILL SUCH THAT ADVERSE MOTIONS FOR SUMMARY JUDGMENT SHOULD HAVE BEEN DENIED.

**{¶15}** In her first assignment of error, Barnes claims that the trial court erroneously concluded that the evidence does not give rise to a genuine issue of material fact regarding Michael's testamentary capacity. We agree.

**{¶16}** This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is proper under Civ.R. 56(C) if: "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) * * * reasonable minds can come to but one conclusion" adverse to the nonmovant when the evidence is viewed most strongly in favor of the nonmovant. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

**{¶17}** The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). The moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* Once this burden is satisfied, the nonmoving party bears the burden of offering specific facts to show a genuine issue for trial. *Id.* at 293. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to, or provide, some evidentiary material that demonstrates a genuine dispute over a material fact. *In re Fike Trust*, 9th Dist. Wayne No. 06CA0018, 2006-Ohio-6332, ¶ 10.

**{¶18}** The parties that moved for summary judgment included Kaforey as executrix of the 2008 will and multiple other beneficiaries of the 2008 will who were named as defendants in the will contest. The movants claimed that there was no triable issue of fact regarding whether Michael lacked testamentary capacity and whether he was unduly influenced.

{¶19} The law recognizes that a testator whose mind is impaired "by disease or otherwise" can still have capacity to make a will. *West v. Knoppenberger*, 16 Ohio C.D. 168, 179 (Ohio Cir. Ct. 1903). Testamentary capacity exists when the testator has sufficient mind to: (1) understand the nature of the business in which he is engaged; (2) comprehend generally the nature and extent of the property which constitutes his estate; (3) hold in his mind the names and identity of those who have natural claims on his bounty; and (4) appreciate his relation to the members of his family. *Niemes v. Niemes*, 97 Ohio St. 145 (1917), paragraph four of the syllabus. The general rule is that "[t]he mental condition of the testator at the time of making a will determines the testamentary capacity of the testator." *Oehlke v. Marks*, 2 Ohio App.2d 264, 265-266 (9th Dist.1964), quoting *Kennedy v. Walcutt*, 118 Ohio St. 442 (1928), paragraph two of the syllabus, overruled on other grounds by *Krishbaum v. Dillon*, 58 Ohio St.3d 58 (1991). Evidence of the testator's condition "'within a reasonable time before and after the making of the will is admissible as throwing light on his mental condition at the time of the execution of the will in question.'" *Id.* What constitutes a "reasonable time" depends on the circumstances of the particular case. *Oehlke* at 266. The burden of proof in determining testamentary capacity is on the party contesting the will. *Kennedy* at paragraph six of the syllabus.

{¶20} A rebuttable presumption exists that a person under guardianship lacks the testamentary capacity to write a valid will. *See Taylor v. Garinger*, 30 Ohio App.3d 184, 186 (12th Dist.1986). The degree of proof necessary to rebut this presumption is not high. *See id*. at 186-187. Instead, the degrees of proof necessary to both rebut the presumption of incompetency and establish capacity are coterminous, and, as discussed, can be met by showing that the decedent had sufficient mind and memory to: (1) understand the nature of the business in which he is engaged; (2) comprehend generally the nature and extent of his property; (3) hold in his

mind the names and identity of those who had natural claims upon his bounty; and (4) be able to appreciate his relation to the members of his family. *Id.* at 187, citing *Niemes* at paragraph four of the syllabus.

{¶21} In this case, the moving parties argue that there was no question of fact regarding whether Michael had the requisite capacity to execute the 2008 will. In support, the movants point to the deposition testimony of Kaforey.

{¶22} Kaforey testified in her capacity as a nurse and lawyer that Michael possessed testamentary capacity to make the 2008 will. She had been Michael's guardian for about three years when she drafted the 2008 will.

{¶23} Kaforey stated that Michael was compliant with his medications and was not under the influence of drugs when he executed the 2008 will. She testified that she was familiar with signs that Michael was not compliant with his medications for schizophrenia or on drugs. When Michael was not taking his medications properly he suffered from, and would react to, auditory hallucinations. He would also be dirty or unkempt and agitated. Kaforey testified that there were times during her guardianship of Michael when he was not competent to execute a will because he was not taking his medications or was using drugs. However, she testified that Michael did not exhibit any of the signs of noncompliance with his medications or of being under the influence of drugs when he made the 2008 will.

{¶24} Kaforey also testified that Michael wanted to make the will. She explained that she met with Michael on multiple occasions and discussed with him at length who the beneficiaries of the will would be. Michael specifically requested to add his girlfriend as a beneficiary of the 2008 will. He also requested to add St. Jude's Hospital as a beneficiary because he wanted to contribute to the hospital's care for children. Kaforey testified that she

discussed with Michael that he did not want Barnes to take under the will because Barnes was already financially stable.

{¶25} Kaforey further testified that she specifically assessed Michael's capacity to make the 2008 will on the day he executed the will. She had no doubt that he possessed testamentary capacity. She testified that Michael was of sufficient mind and memory to understand the nature of what he was doing and the nature or extent of his property. According to Kaforey, Michael knew the identities of those he wanted to name as beneficiaries, and also understood and appreciated his relationship to family members. Having concluded that Michael possessed testamentary capacity to make the 2008 will, Kaforey permitted Michael to execute the will in the presence of two witnesses.

{¶26} Based upon Kaforey's testimony, we conclude that the movants successfully rebutted the presumption that Michael lacked testamentary capacity because he was under guardianship and also met their initial *Dresher* burden of "informing the trial court of the basis for the motion, and identifying those portions of the record that show the absence of a genuine issue of material fact" in regard to testamentary capacity. *See Dresher*, 75 Ohio St.3d at 293. Therefore, Barnes bore the reciprocal burden of establishing the existence of a material fact. *See id.*

{¶27} In response to the motions for summary judgment, Barnes argues that a question of fact exists as to whether Michael lacked capacity to execute the 2008 will (and the 2007 and 2006 wills). She argues, inter alia, that Michael's extensive medical records show that Michael could not have possessed testamentary capacity at the time he made the will. However, the medical records to which Barnes refers apparently were never placed in the record. Moreover, Barnes does not discuss the contents of the medical records with any particularity, nor did she

testify regarding any specific facts in those records that would show that Michael lacked testamentary capacity at the time he made the 2008 will. Accordingly, there is no basis to conclude that the medical records created an issue of fact sufficient to overcome summary judgment.

{¶28} Barnes also points to evaluations of Michael by his psychiatrist to establish that Michael lacked testamentary capacity. However, while the psychiatrist opined that Michael should remain under guardianship because he had chronic mental illness and poor insight and judgment, the psychiatrist did not address any of the criteria necessary to determine testamentary capacity. To the extent Barnes claims that the psychiatrist told her that Michael could not make a will, her claim consists of inadmissible hearsay that was not properly before the court on summary judgment. Accordingly, the psychiatric evaluations upon which Barnes relies do not create a triable issue of fact regarding Michael's testamentary capacity.

{¶29} Barnes further argues that the fact that Michael remained under guardianship is evidence sufficient to overcome summary judgment. Her reliance on Michael's status as a ward under guardianship is misplaced, however. The presumption that a person under guardianship lacks testamentary capacity is a rebuttable one. *See Garinger*, 30 Ohio App.3d at 186; *Meek v. Cowman*, 4th Dist. Washington No. 07CA31, 2008-Ohio-1123, ¶ 10. Once evidence is produced sufficient to rebut the presumption, the presumption disappears and "does not carry forward as evidence. * * * Thus, once the presumption is met with sufficient countervailing evidence, it fails and serves no further evidentiary purpose." (Internal citations omitted.) *Meek* at ¶ 10, quoting *Horsley v. Essman*, 145 Ohio App.3d 438, 444 (4th Dist. 2001). As already discussed, we conclude that the movants presented sufficient evidence to rebut the presumption that Michael lacked testamentary capacity because he was under guardianship. Accordingly, Barnes cannot

rely on the fact of Michael's continuing guardianship to create a genuine issue of material fact on the question of Michael's testamentary capacity. *See id.*

{¶30} Barnes also relies on her roles as Michael's mother and former guardian to support her contention that Michael could not have had testamentary capacity to make a will. Barnes is required to present evidence of Michael's condition "'within a reasonable time before and after the making of the will'" in order to create an issue of fact regarding Michael's testamentary capacity at the time he executed the 2008 will. *See Oehlke*, 2 Ohio App.2d at 266, quoting *Kennedy*, 118 Ohio St. 442, at paragraph two of the syllabus. However, Barnes testified in her deposition that she could not recall the last time that she had either seen Michael or spent significant time with him before he executed the 2008 will, or when she next saw him after he signed the will. Barnes admitted in her deposition that Kaforey was in a better position than she was to evaluate Michael's testamentary capacity when he signed the 2008 will. Moreover, Mark testified that he could not recall when he last saw or spent time with Michael before and after he executed the 2008 will. Neither Barnes nor Mark observed Michael's condition at the time he signed the 2008 will. Accordingly, Barnes has not pointed to any evidence that anyone other than Kaforey had personal knowledge of Michael's condition "'within a reasonable time before or after the making of the will'" that would give rise to an issue of fact as to Michael's testamentary capacity when he signed the 2008 will. *See id.*

{¶31} Barnes further argues that summary judgment is inappropriate because Kaforey admitted to her and to Mark that Michael was incompetent to write a will. Barnes and Mark both testified that Kaforey specifically discussed with them Michael's testamentary capacity and told them that Michael could never make a will. Barnes testified that Kaforey told her before Michael's death that the 2007 will was invalid. Mark testified that he and his mother met with

Kaforey after Michael's death and Kaforey informed them that Michael's 2008 will was invalid "[b]ecause Michael was incompetent * * *." Kaforey allegedly told them that a court would not uphold any will that Michael executed and that Michael's entire estate would revert to the family. According to Mark, Kaforey told them that submitting the will to the probate court was "a matter of process that she had to go through." Mark testified that Kaforey advised them to file a will contest and referred them to legal counsel.

{¶32} Kaforey denied ever stating that Michael lacked testamentary capacity when he executed the 2008 will. She also denied telling Barnes and Mark that Michael's entire estate would revert to the family.

{¶33} Despite the testimony of Barnes and Mark that Kaforey told them that Michael lacked testamentary capacity, the trial court found that "the only evidence as to [Michael's] testamentary capacity in the relevant time period is the testimony of Kaforey that [Michael] had sufficient testamentary capacity when he signed the [2008 will]." In so holding, the court emphasized that "Kaforey is an experienced probate attorney with a medical background who has repeatedly dealt with clients with mental health and/or substance abuse issues." The court did not address the assertions that Kaforey told Michael's family members that he was not competent to make a will, but rather disregarded that testimony.

{¶34} We find that the trial court improperly weighed the credibility of testimony in disregarding the assertions of Barnes and Mark that Kaforey told them that Michael was incompetent. A trial court is not permitted to weigh credibility when considering evidentiary material presented in favor of, or in opposition to, summary judgment. *Helms v. Cahoon*, 9th Dist. Summit No. 20527, 2002 WL 57978, *2 (Jan. 16, 2002). Here, if Kaforey did tell Barnes and Mark that she believed that Michael lacked testamentary capacity, her statement was an

admission that would support Barnes' claim that Michael was not competent to make the 2008 will. Thus, it would constitute evidence that Michael lacked testamentary capacity. The trial court was not entitled to ignore such evidence, even if the court felt that it was contrived or that Kaforey's testimony was more credible. *See id*.

**{¶35}** In light of Kaforey's alleged admission that Michael lacked testamentary capacity to make the 2008 will, the evidence adduced both for and against the motions for summary judgment presented the trial court with competing reasonable inferences as to Michael's testamentary capacity. The trial court, in granting summary judgment to the movants, resolved this conflict by improperly weighing the evidence and the credibility of witnesses and choosing the inferences that favored the movants. *See id.* Rather than weighing the evidence or the credibility of the parties, the trial court was obligated to make all permissible inferences and resolve credibility in favor of Barnes, the nonmoving party. *See Harry London Candies, Inc. v. Bernie J. Kosar Greeting Card Co.*, 9th Dist. Summit No. 20655, 2002 WL 185305, *3 (Feb. 6, 2002), citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 121 (1980).

**{¶36}** When the evidence in this matter is viewed in a light most favorable to Barnes, the nonmoving party, reasonable minds could come to differing conclusions regarding Michael's testamentary capacity to execute the 2008 will. Accordingly, a genuine issue of material fact exists, and the trial court's award of summary judgment was improper. Barnes' first assignment of error is sustained.

Assignment of Error Two

> THE PROBATE COURT ERRED AS A MATTER OF LAW IN DETERMINING THAT REASONBLE MINDS COULD COME TO BUT ONE CONCLUSION ADVERSE TO THE WILL CONTESTANTS. CONSTRUING THE EVIDENCE IN THE LIGHT MOST FAVORABLE TO THEM THE CONTESTANTS MADE A SUFFICIENT SHOWING THAT THE CONTESTED WILL MAY HAVE BEEN THE PRODUCT OF UNDUE

INFLUENCE SUCH THAT ADVERSE MOTIONS FOR SUMMARY JUDGMENT SHOULD HAVE BEEN DENIED.

{¶37} In her second assignment of error, Barnes argues that the trial court improperly granted summary judgment on her claim that Michael's 2008 will was the product of undue influence. We disagree.

{¶38} A will that has been admitted to probate is presumed to have been made free from restraint. *Krischbaum*, 58 Ohio St.3d at 64. The contestants have the burden to prove undue influence. *See id.*

{¶39} To invalidate a will, undue influence "must so overpower and subjugate the mind of the testator as to destroy his free agency and make him express the will of another rather than his own, and the mere presence of influence is not sufficient." *West v. Henry*, 173 Ohio St. 498, 501 (1962). In addition, the "[u]ndue influence must be present or operative at the time of the execution of the will resulting in dispositions which the testator would not otherwise have made." *Id.* Proof of undue influence requires: (1) a susceptible testator; (2) another's opportunity to exert influence on the testator; (3) the fact of improper influence exerted or attempted; and (4) a result showing the effect of such influence. *Id.* at 510-511.

{¶40} Barnes claims that Michael's brother James unduly influenced Michael in making the 2008 will. When asked at deposition about the basis of her belief, she responded only that James and Michael had always been close, used drugs together, and "[t]hey connived everything * * * [t]hey connived money out of you constantly for drugs."

{¶41} In James' deposition, he testified that he was in prison when Michael made the 2008 will but communicated with Michael during visits and by letter. James said that he discussed Michael's will with him, but was unable to articulate what specifically he may have said to Michael other than that he "mentioned names and stuff, but not from 2006, 2007[,] or

2008." James testified that he did not unduly influence Michael in the making of any of his wills. His testimony was as follows:

> Q.  * * * Relative to the '06, '07 and '08 wills, you didn't unduly influence your brother to do anything relative to those wills, did you?
>
> A.  I can't really say [that] I did.

{¶42} In view of the testimony, we find that the movants have met their *Dresher* burden to point to an absence of evidence on an essential element of Barnes' claim that James unduly influenced Michael. They have shown an absence of evidence of "the fact of improper influence exerted or attempted" by James. *See West*, 173 Ohio St.3d at 511. Thus, it becomes Barnes' burden to demonstrate that a material issue of fact remains as to this element. *See Dresher*, 75 Ohio St.3d at 293.

{¶43} Barnes does not point to any fact that would demonstrate that James influenced or attempted to influence Michael in making the 2008 will. Instead, Barnes focuses upon Michael's mental health and substance abuse issues and his status as a susceptible testator. Because Barnes bears the burden of proof in this matter, and because she fails to meet her reciprocal *Dresher* burden of proof on the third essential element of undue influence, the trial court properly granted summary judgment on her claim that James unduly influenced Michael with respect to the 2008 will.

{¶44} Barnes also asserts that Kaforey unduly influenced Michael with respect to the making of his will. On appeal, Barnes argues that a presumption of undue influence arises because "Kaforey was a guardian and acted as the ward's attorney while naming herself [e]xecutrix in the contested will * * *."

{¶45} Barnes contends that a presumption of undue influence arises because Kaforey and Michael had a confidential relationship, and Kaforey will benefit from her position as executrix of the will. We are not persuaded by Barnes' argument. In the cases that Barnes cites where a confidential relationship gave rise to a presumption of undue influence, the confidential relationship existed between the decedent and a beneficiary of the will. *See Diamond v. Creager*, 2d Dist. Montgomery No. 18819, 2002 WL 313137 *3 (Mar. 1, 2002); *Thorp v. Cross*, 11th Dist. Portage No. 97-P-0079, 1998 WL 35264418 *1 (Oct. 16, 1998). Here, Kaforey was not a beneficiary of Michael's will. The mere fact that Kaforey is executrix of the will does not, by itself, give rise to a presumption of undue influence. *See Gannett v. Booher*, 12 Ohio App.3d 49, 57 (6th Dist.1983).

{¶46} The movants argue that there is no evidence to support undue influence by Kaforey. In support of their *Dresher* burden, they point to a complete lack evidence in the record that Kaforey either exerted or attempted improper influence.

{¶47} In response, Barnes fails to point to any fact that could give rise to a reasonable inference that Kaforey exerted or attempted improper influence in relation to Michael's 2008 will. In fact, Barnes argues that Kaforey was frightened of Michael, and that she drafted the 2008 will without regard for Michael's testamentary capacity because she was intimidated by him. Rather than demonstrate that Michael was either unduly influenced or the target of undue influence by Kaforey, these alleged facts, if true, would tend to show that Kaforey drafted the 2008 will under some degree of duress from Michael.

{¶48} Barnes has not pointed to any evidence that would raise a question whether Kaforey "so overpower[ed] and subjugate[d] the mind of the testator as to destroy [Michael's] free agency and make him express the will of another rather than his own." *See West*, 173 Ohio

St. at 50. Barnes bore the burden of proof on her claim of undue influence. Because Barnes failed to meet her reciprocal *Dresher* burden to show any evidence of "the fact of improper influence exerted or attempted," the trial court did not err in determining that there was no triable issue of fact on Barnes' claim of undue influence by Kaforey. *See id.* at 511.

**{¶49}** We find that the probate court properly granted summary judgment to the movants on Barnes' claim that Michael suffered undue influence in making the 2008 will. On this basis, Barnes' second assignment of error is overruled.

### III

**{¶50}** Barnes' first assignment of error is sustained. Her second assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Probate Division is reversed in part and affirmed in part. This matter is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part and
reversed in part.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

BETH WHITMORE
FOR THE COURT

CARR, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

MARK H. LUDWIG, Attorney at Law, for Appellant.

RICHARD P. KUTUCHIEF, Attorney at Law, for Appellee.